**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------X

TRICIA LANE,

Plaintiff,

-against-

SALESFORCE, INC.

Defendant.

-----------------------------------------------X

Case No. 1:25-cv-09707

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE COMPLAINT

**ORAL ARGUMENT REQUESTED**

**FISHER & PHILLIPS LLP**
Colleen P. Tandy, Esq.
Kathryn K. Mize, Esq.
400 Connell Drive, Suite 4000
Berkeley Heights, New Jersey 07922

Times Square Tower
7 Times Square, Suite 4300
New York, New York 10036

Phone: (908) 516-1050
Fax: (908) 516-1051
E-mail: ctandy@fisherphillips.com
kmize@fisherphillips.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTUAL HISTORY ..... 2

A. Plaintiff's Claims as Set Forth in the Complaint ..... 2

B. Plaintiff Executes the Arbitration Agreement ..... 4

C. The Arbitration Agreement and its Scope ..... 7

LEGAL ARGUMENT ..... 7

I. The Law Favors Arbitration ..... 7

II. The Arbitration Agreement is Valid, Enforceable, and Covers Plaintiff's Alleged Causes of Action ..... 8

A. The Arbitration Agreement is a Valid Agreement to Arbitrate ..... 9

B. The Agreement Covers Plaintiff's Claims ..... 10

III. The EFAA Does Not Apply to Plaintiff's Claims ..... 11

A. The EFAA Does Not Apply to All Gender Discrimination Claims ..... 13

B. Plaintiff Has Failed to Plausibly Plead a Claim for Sexual Harassment ..... 16

1. Singh Analysis ..... 16

2. Post-Singh Anayses ..... 17

3. Plaintiff's Has Not Plausible Plead a Sexual Harassment Claim Under NJLAD ..... 19

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarez v. Experian Information Solutions, Inc.*,
661 F.Supp.3d 18 (E.D.N.Y. 2023), *aff'd*, No. 19-cv-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024) ... 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ... 7

*Brazzano v. Thompson Hine LLP*,
No. 24-cv-01420 (ALC) (KHP), 2025 WL 963114 (S.D.N.Y. Mar. 31, 2025), *appeal filed,* No. 25-927 (2d Cir. Apr. 17, 2025) ... 12

*Cornelius v. CVS Pharmacy, Inc.*,
No. 23-cv-1858, 2023 WL 6876925 (D.N.J. Oct. 18, 2023), *aff'd in part, vacated in part, remanded,* 133 F.4th 240 (3d Cir. 2025), *cert. denied*, No. 25-139, 2025 WL 2824164 (Oct. 6, 2025) ... 15, 19

*Hastings v. Nifty Gateway, LLC*,
724 F.Supp. 3d 241 (S.D.N.Y. 2024) ... 9

*Hines v. Overstock.com, Inc.*,
668 F.Supp.2d 362 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) ... 9

*Hu v. Whaleco, Inc.*,
779 F.Supp.3d 265 (E.D.N.Y. 2024) ... 10

*Kutluca v. PQ New York Inc.*,
266 F.Supp.3d 691 (S.D.N.Y. 2017) ... 9

*Lambert v. New Start Capital LLC*,
No. 1:24-cv-8055, 2025 WL 2295254 (S.D.N.Y Aug. 7, 2025), *appeal filed,* No. 25-2160 (2d Cir. Sept. 9, 2025) ... 12

*Latif v. Morgan Stanley & Co. LLC*,
No. 18cv11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ... 8

*Mihalik v. Credit Agricole Cheuvreux N.Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ... 14

*Montanus v. Columbia Mngmt Invest. Advisers, LLC*,
25-cv-2798, 2025 WL 2503326 (S.D.N.Y. Sept. 2, 2025) (PAE) ... 13, 15, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................8

*Moulds v. Skillcycle, Inc.*,
No. 23-cv-4873, 2024 WL 2206464 (E.D. Pa. Mar. 27, 2024)....................18

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................8

*Nunez v. Citibank, N.A.*,
No. 08 Cv. 5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009)....................8

*Oestreicher v. Equifax Information Services, LLC*,
No. 23-cv-00239, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024)....................10

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998)....................11

*Owens v. PwC, LLC*,
786 F.Supp.3d 831 (S.D.N.Y. 2025), *appeal filed,* No. 25-1717 (2d Cir. July 14, 2025)....................15

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)....................8

*Singh v. Meetup LLC*,
750 F. Supp. 3d 250 (S.D.N.Y. 2024)*, reconsideration denied,* No. 23-cv-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).................... *passim*

*Smith v. Boehringer-Ingelheim Pharm. LLC*,
No. 24-cv-1266, 2025 WL 2403042 (D. Conn. Aug 19, 2025)....................18

*Smith v. Meta Platforms, Inc.*,
No. 24-cv-4633 2025 WL 2782484 (S.D.N.Y. Sept. 30, 2025)....................13, 15, 16, 18

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................9

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)....................9

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023)....................12, 14

**State Cases**

*Liberty Mgmt. & Constr. Ltd. v. Fifth Ave. & Sixty-Sixth St. Corp.*,
208 A.D.2d 73 (1st Dep't, NY 1995)....................8



FP 61155394.2

*Stark v. Molod Spitz DeSantis & Stark, P.C.*,
9 N.Y.3d 59 (2007) ........................................................ 8

**Federal Statutes**

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. ........................ 1, 4, 10

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. ........................ 1, 4, 10, 11

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021
("EFAA"), 9 U.S.C. §§ 401-402 ........................................................ *passim*

Federal Arbitration Act ("FAA") ........................................................ *passim*

9 U.S.C § 401(4) ........................................................ 12

9 U.S.C. § 402(a) ........................................................ 12

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq. ........................ *passim*

**State Statutes**

New Jersey Equal Pay Act ("NJ EPA"), N.J. Stat. Ann. § 10:5-12(a) ........................ 1, 4, 11

New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et
seq. ........................................................ *passim*

New York City Human Rights Law, New York City Admin. Code, § 8–101 et
seq. ("NYCHRL") ........................................................ *passim*

New York Labor Law § 194 ("NY EPA") ........................................................ 1, 4, 10, 11

New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL") ............ *passim*

**Rules**

Rule 12(b)(6) ........................................................ 12, 13

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ........................................................ 18

*Stop Sexual Harassment Act Notice*, NYC Human Rights,
https://www.nyc.gov/assets/cchr/downloads ........................................................ 17

*Stop Sexual Harassment Act,* NYC Human Rights,
https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (*last visited by the Court* Aug. 15, 2024) ........................................................ 17

## PRELIMINARY STATEMENT

Defendant Salesforce, Inc. ("Defendant," "Salesforce," or the "Company") by and through its undersigned counsel, Fisher & Phillips LLP, hereby submits this memorandum of law in support of its motion to stay the complaint filed by Tricia Lane ("Plaintiff" or "Lane"), and compel binding arbitration of all claims raised against it therein.

Plaintiff, a former Regional Vice President, employed by Salesforce, asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq. ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); the New York City Human Rights Law, New York City Admin. Code, § 8–101 et seq. ("NYCHRL"); and the New Jersey Law Against Discrimination ("NJLAD") N.J. Stat. Ann. § 10:5-1 et seq. Lane also brings claims under the New York Labor Law § 194 ("NY EPA"), and the New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ("NJ EPA"), (*Doc.* 1, ¶ 2).

The Court should stay this matter and compel arbitration because Plaintiff's claims are subject to a binding and enforceable arbitration agreement voluntarily executed by Plaintiff on or about June 21, 2019. Pursuant to that agreement, Plaintiff voluntarily agreed to arbitrate all disputes, claims and matters arising out of or relating to her employment by the Company or termination of employment exclusively through binding arbitration.

Defendant anticipates that, because the Complaint attempts to assert vague references to a hostile work environment based on sex, Plaintiff will seek to enjoin arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401-402 ("EFAA" or the "Act"), which precludes employers from requiring employees to arbitrate "sexual

harassment disputes" as defined under applicable law. As outlined herein, however, Plaintiff has failed to assert facts, which if true, would actually constitute sexual harassment. Thus, she has failed to plausibly plead a claim for sexual harassment under Title VII, the NYSHRL, the NYCHRL, and NJLAD. The EFAA does not present any barrier to arbitration in this case.

## FACTUAL HISTORY

### A. Plaintiff's Claims as Set Forth in the Complaint

On November 21, 2025, Plaintiff filed a multi-count Complaint against Defendant in the United States District Court, Southern District of New York ("Southern District"). (*Doc.* 1).

The focus of Plaintiff's Complaint involves the various forms of alleged age and gender-discrimination she allegedly experienced while employed at Salesforce. Her Complaint starts with an accounting of Plaintiff's job positions before her employment at Salesforce, emphasizing her accomplishments and accolades. (*Id.*, ¶¶ 11-18). She then details her commencement at Salesforce and her ultimate promotion to Regional Vice President ("RVP") in August 2019, when she joined the "lowest performing team in the [Salesforce] nonprofit business for 11 years." (*Id.*, ¶¶ 19-24). She then alleges that she was reassigned and inherited two Account Executive direct reports with performance issues and new supervisor, Rebecca Temple ("Temple"). (*Id.*, ¶¶33-35). She states that three other RVPs reported to Temple: "Justin Schumer, who is probably in his early forties; Justin Raisor, who is probably in his late thirties; and Justin Simon, who is probably in his early to mid-forties." (*Id.*, ¶37). She generally contends that Temple "treated her very differently from Schumer, Raisor, and Simon" and "blamed [Lane] for issues she knew were not Lane's fault, including issues with accounts that pre-dated her responsibility for them." (*Id.*, ¶¶38-39).

Plaintiff continues with examples of Temple's "different[]" treatment, including criticisms of Plaintiff's forecast reports and accusations of "incidentally submitting an 'artificially low' first quarter forecast." (*Id.*, ¶¶43-45). Meanwhile, Plaintiff alleges Temple did not criticize her "younger, male peers for their forecasting shortcomings." (*Id.*, ¶44). She generally claims that Temple excluded her from business communications and was late to their one-on-one meetings but did not engage in similar conduct with the younger, male peers. (*Id.*, ¶¶46-47).

Ultimately, in her Complaint, Plaintiff alleges that Temple placed her on a performance improvement plan even though Temple never discussed poor performance with Plaintiff. (*Id.*, at ¶51). She eventually complained to Human Resources, claiming she thought "Temple was discriminating against her and creating a hostile work environment." (*Id.*, ¶53). She also vaguely claims that she "learned that Salesforce was hiring much less experienced (younger) employees and paying them more than what Salesforce was paying her." (*Id.*, ¶60). After returning from a medical leave of absence, Plaintiff also alleges that "Temple continued to try to set Lane up for failure and catch her in errors. Temple denied Lane information that she need [*sic*] to perform her job, and generally was unsupportive of her." (*Id.*, ¶72).

Eventually, she alleges she received a communication from an HR Representative who said "that he/they had 'done their due diligence' and did not find anything that violated Salesforce policy." (*Id.*, ¶74). Plaintiff's Complaint then goes on to account for her EEOC Charge filing and Temple reinstating the performance improvement plan before terminating her employment on April 30, 2025. (*Id.*, ¶¶77-80).

As to the alleged sexual harassment Plaintiff conveniently interjects into her Complaint, she only identifies the alleged differential treatment by claiming that Temple compared to her younger, male peers summarized above. Plaintiff identifies no other comments, actions or conduct

as constituting sexual harassment other than a vague assertion that her "manager subjected her to sexual and age-based harassment." (*Id.*, ¶1). She does not allege a single sexualized comment or behavior that occurred during her employment with Salesforce.

Plaintiff asserts fourteen causes of action in the Complaint, specifically: (1) Gender Discrimination under the Title VII; (2) Age Discrimination under the ADEA, (3) Disability Discrimination under the ADA; (4) Discrimination under the NYSHRL; (5) a Discrimination under the NYCHRL; (6) Discrimination under the NJLAD; (7) Retaliation under Title VII; (8) Retaliation under the ADEA; (9) Retaliation under the ADA; (10) Retaliation under NYSHRL; (11) Retaliation under NYCHRL; (12) Retaliation under NJLAD; (13) Unequal Pay under NY EPA; and (14) Unequal Pay under NJ EPA.

**B. Plaintiff Executes the Arbitration Agreement**

Defendant hired Plaintiff as a Senior Field Sales Account Executive on July 3, 2017. (Declaration of David McAteer ("McAteer Dec."), ¶2). In June 2019, Plaintiff was promoted to Strategic Account Executive. (*Id.*, ¶3) As part of Plaintiff's onboarding for her new role, she was provided an "Offer Letter" outlining the terms and conditions of her employment, a true and correct copy attached the McAteer Dec. as **Exhibit A**, which included an Arbitration Agreement (the "Arbitration Agreement"). (*Id.*, ¶15)

The Arbitration Agreement plainly explains that the signing employee agrees to use binding arbitration as the sole means of resolving disputes between the Company and/or its employees. (*See* Arbitration Agreement*,* ¶1). It makes clear that, in agreeing to do so, the employee waives her right to proceed in court and to a trial by jury, emphasizing that:

> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes

> include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but (notwithstanding the provisions of arbitration rules incorporated by reference below) not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

(*Id.*, at 16, Section 1).

The Agreement further emphasizes that the Federal Arbitration Act ("FAA") governs claims brought under the Arbitration Agreement, and establishes filing procedures, stating that "[t]he party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period." (*Id.,* at 7, Section 3).

The Arbitration Agreement explicitly outlines the scope of the waiver and scenarios to which the Arbitration Agreement applies:

> By entering into this Agreement, you and salesforce.com, inc. (the "Company") mutually consent to resolve by arbitration all claims or controversies, past, present or future, whether or not arising out of your employment (or its termination), that the Company may have against you or that you (and no other person) may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents (in their capacity as such or otherwise), (3) the Company's parent, subsidiary and affiliated entities ("affiliate"), (4) the Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and (5) all successors and assigns of any of the foregoing.

(*Id.*, at 6, Section 1).

Further, the Arbitration Agreement specifically advises that signing the document constitutes acceptance of the provisions therein. In signing the Arbitration Agreement, Plaintiff agreed to the following acknowledgement that comes directly before the signature line:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE

> COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
>
> I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

(*Id.*, at 9–10) (emphasis in original). She also signed her initials under Paragraph 7 of the Arbitration Agreement, in which she acknowledged that her execution of the Arbitration Agreement was not mandatory, and she had the option to "opt-out" of arbitration. (*Id.*, at 9, ¶ 7.) Salesforce has no record of ever receiving an "opt-out" form from Plaintiff as described in Paragraph 7 of the Arbitration Agreement. (McAteer Decl. at ¶ 17).

Salesforce's records show that Plaintiff voluntarily executed the Arbitration Agreement by DocuSign, which is a common software program that applies electronic signatures on documents. According to Salesforce's electronic records, Plaintiff's Arbitration Agreement was generated and sent to her via the Workday Candidate Portal on June 14, 2019 at 5:03 a.m. (*Id.* at ¶ 11). To use the DocuSign program, Plaintiff needed to login to DocuSign with a unique user ID and password, which was associated with the email address tricia.lane@salesforce.com. (*Id.* at ¶12). According to Salesforce's electronic records, Plaintiff electronically signed her Arbitration Agreement via DocuSign on June 21, 2019 at 6:12 p.m.. (*Id.* at ¶ 13). A copy of the executed version of Plaintiff's Arbitration Agreement was then immediately made available to her to download or email to herself, or view in the Workday Candidate Portal. (*Id.* at ¶14). **Exhibit B** of the McAteer Dec. is a true and correct copy of DocuSign Certificate of Completion regarding Plaintiff's employment-related agreements. (*Id.* at ¶16).

**C. The Arbitration Agreement and its Scope**

The Arbitration Agreement specifies that it requires disputes that otherwise would be resolved in a court of law or before a forum other than arbitration "to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." (*Id.* at 6, ¶ 1). The Arbitration Agreement goes on to specify that it applies to "disputes regarding the employment relationship…compensation…termination, discrimination or harassment and claims arising under…Civil Rights Act of 1964…state statutes and local ordinances, if any, addressing the same or similar subject matters, and all other state statutory and common law claims." *Id.*

The Arbitration Agreement provides some limited exceptions to its applicability which are not relevant here, including "claims for workers' compensation, state disability insurance and unemployment insurance benefits…the Franken Amendment, and claims not subject to predispute arbitration agreement." (*Id.*, at 6, ¶ 2).

Finally, the Arbitration Agreement specifies that it is governed by the FAA, id., and is the full and complete agreement between the parties relating to the formal resolution of employment-related disputes between them, and if any portion of it is deemed unenforceable, the remainder of the Arbitration Agreement will remain enforceable, (*Id.*, at 6, 9).

**LEGAL ARGUMENT**

**I. THE LAW FAVORS ARBITRATION**

The FAA, which governs the Arbitration Agreement, was enacted "in response to widespread judicial hostility to arbitration agreements," and "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011); *see*



FP 61155394.2

*also, e.g., Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004).

In accordance with that policy, the FAA "requires courts to enforce covered arbitration agreements according to their terms." *Latif v. Morgan Stanley & Co. LLC*, No. 18cv11528, 2019 WL 2610985, *2 (S.D.N.Y. June 26, 2019), *quoting Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). The FAA "leaves no place for the exercise of discretion by a district court, but instead *mandates* that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Nunez v. Citibank, N.A.*, No. 08 Cv. 5398, 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009) (emphasis added), *quoting Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). Therefore, "a written agreement to arbitrate '... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2); *accord, e.g., Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016).

New York likewise has a "long and strong public policy favoring arbitration," and "[t]herefore, New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Stark v. Molod Spitz DeSantis & Stark, P.C.,* 9 N.Y.3d 59, 66 (2007) (internal quotation marks omitted). "[W]here there is no substantial question whether a valid agreement was made or complied with ... the court shall direct the parties to arbitrate." *Liberty Mgmt. & Constr. Ltd. v. Fifth Ave. & Sixty-Sixth St. Corp.*, 208 A.D.2d 73, 77 (1st Dep't. 1995) (quoting CPLR 7503(a)).

The Arbitration Agreement relevant here must be viewed within this context.

## II. THE ARBITRATION AGREEMENT IS VALID, ENFORCEABLE, AND COVERS PLAINTIFF'S ALLEGED CAUSES OF ACTION

The Second Circuit applies a two-step test to determine whether a cause of action is subject to an existing arbitration agreement. The first step is to determine whether a valid agreement to arbitrate exists between the parties, a question that is resolved by state contract law. *Alvarez v. Experian Information Solutions, Inc.*, 661 F.Supp.3d 18, 24 (E.D.N.Y. 2023), *aff'd*, No. 19-cv-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024). If the court finds a valid arbitration agreement exists, it then considers whether the parties' dispute is within its scope. *Id.* Where a court holds that an arbitration agreement is valid and the claims before it arbitrable, it must stay the litigation and send the dispute to arbitration. *Id.*; *Smith v. Spizzirri*, 601 U.S. 472, 477-78 (2024).

Here, the Arbitration Agreement is valid, enforceable and covers Plaintiff's alleged causes of action against Defendant. Thus, it should be enforced by this Court.

### A. The Arbitration Agreement is a Valid Agreement to Arbitrate

A court must first apply traditional contract-law principles to determine whether a valid contract exists. It is well-settled under New York contract law that, a contract requires a "meeting of the minds" and a "manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2nd Cir. 2019). On a motion to compel arbitration under New York law, "an agreement to arbitrate exists 'where (1) the notice of the arbitration provision is reasonably conspicuous and (2) the manifestation of assent is unambiguous as a matter of law.'" *Hastings v. Nifty Gateway, LLC*, 724 F.Supp. 3d 241, 248-249 (S.D.N.Y. 2024), *quoting Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76 (2nd Cir. 2017).

This burden is satisfied here. Plaintiff indisputably signed the Arbitration Agreement electronically via DocuSign, thereby affirmatively assenting to be bound by its terms. *See Kutluca v. PQ New York Inc.*, 266 F.Supp.3d 691, 701 (S.D.N.Y. 2017) (employee entered into agreement to arbitrate by clicking accept button to employer's terms and conditions); *Hines v. Overstock.com,*

*Inc.*, 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009) ("The making of contracts over the internet has not fundamentally changed the principles of contract," *quoting Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)), *aff'd*, 380 F. App'x 22 (2d Cir. 2010); *Oestreicher v. Equifax Information Services, LLC*, No. 23-cv-00239, 2024 WL 1199902, *5 (E.D.N.Y. Mar. 20, 2024) (the use of an online form to create a contract "does not fundamentally change" the contract formation analysis), *citing Kai Peng v. Uber Techs, Inc.*, 237 F.Supp. 3d 36, 47-50 (E.D.N.Y. 2017).

Moreover, the signature line appeared directly below a robust acknowledgment clearly indicating that the Arbitration Agreement required Plaintiff to arbitrate all disputes arising out of her employment with Defendant, admitting that the Plaintiff had the ability to consult an attorney before signing if needed and that Plaintiff carefully read the Arbitration Agreement and understood its terms, which Plaintiff did. *See Hu v. Whaleco, Inc.*, 779 F.Supp.3d 265, 283 (E.D.N.Y. 2024) ("A party may agree to arbitrate when they have actual notice of the terms of the arbitration agreement or when notice of the terms is conspicuous enough to put a reasonably prudent person on inquiry notice and the person unambiguously manifests assent").

For these reasons, the Arbitration Agreement constitutes a valid and enforceable agreement to arbitrate.

**B. <u>The Agreement Covers Plaintiff's Claims</u>**

Once a court makes the threshold decision that a valid agreement to arbitrate exists, it then considers whether the agreement encompasses the dispute. In the instant matter, the language of the Arbitration Agreement indisputably covers Plaintiff's claims, and she must pursue them in arbitration.

As stated above, Plaintiff asserts fourteen causes of action for discrimination, and retaliation under Title VII, the ADEA, the ADA, the NYSHRL, NYCHRL, NJLAD, NY EPA, and

NJ EPA.[1] By voluntarily signing the Arbitration Agreement, Plaintiff expressly agreed the Arbitration Agreement applied to all "disputes regarding the employment relationship…compensation…termination, discrimination or harassment and claims arising under…Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act…state statutes and local ordinances, if any, addressing the same or similar subject matters, and all other state statutory and common law claims." (Arbitration Agreement, ¶1). Indeed, the Agreement specifically refers to "state statutes and local ordinances, if any, addressing the same or similar subject matters, and all other state statutory and common law claims[,]" including the NYSHRL, NYCHRL, NJLAD, NY EPA, and NJ EPA. (*Id.*).

The language here is unequivocal, and the Agreement is not susceptible to any interpretation that its terms do not cover the asserted dispute, or the named Defendant. Thus, the Court should order Plaintiff to arbitrate her claims against Defendant in accordance with her agreement to do so. *See, e.g., Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("[W]e have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute") (internal quotations marks & citations omitted).

## III. THE EFAA DOES NOT APPLY TO PLAINTIFF'S CLAIMS

Defendant anticipates that Plaintiff will seek to bypass binding arbitration by invoking the EFAA, a 2022 amendment to the FAA that excludes conduct constituting a "sexual harassment dispute," defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," from the mandatory arbitration provisions of the

[1] Section III discusses why the EFAA does not apply.

FAA. 9 U.S.C. §402(a); 9 U.S.C §401(4). This argument will fail because Plaintiff has not plausibly plead a cause of action for sexual harassment under Title VII, the NYSHRL, NYCHRL, and NJLAD.

As outlined herein, Southern District courts interpreting the EFAA have had to "grapple with numerous questions," regarding the Act including, as relevant here: (1) "the appropriate pleading standard for alleging conduct constituting sexual harassment; and (2) "what constitutes conduct constituting sexual harassment under local law." *Lambert v. New Start Capital LLC*, No. 1:24-cv-8055, 2025 WL 2295254, *1 (S.D.N.Y Aug. 7, 2025) (GHW).

The courts have had the opportunity to address these questions on multiple occasions since the EFAA's March 3, 2022 effective date. With respect to the first question regarding the pleadings, Southern District courts have "almost uniformly employed a 'plausibility standard' in determining whether a plaintiff has 'alleged' conduct constituting sexual harassment." *Id.* at 13; *see also Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585–88 (S.D.N.Y. 2023)*; Brazzano v. Thompson Hine LLP,* No. 24-cv-01420 (ALC) (KHP), 2025 WL 963114 (S.D.N.Y. Mar. 31, 2025) *(collecting cases); Singh v. Meetup LLC,* 750 F. Supp. 3d 250, 253 (S.D.N.Y. 2024) ("The four other EFAA cases decided by judges in this District thus far have applied a 'plausibility' standard for plaintiffs alleging conduct constituting sexual harassment."), *reconsideration denied,* No. 23-cv-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024). In evaluating the "plausibility" of sexual harassment claims under the EFAA, courts have applied the familiar Rule 12(b)(6) standards. *Singh*, 750 F.Supp.3d at 254, *citing Yost*, 657 F.Supp.3d at 577. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ibid*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this standard, a complaint need not contain "detailed factual allegations," but must offer something

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid, quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As to the second question, "what constitutes conduct constituting sexual harassment," courts in this district have recently distinguished sexual harassment from gender discrimination, and made clear that the two are not synonymous for purposes of invoking the EFAA. Regarding the definition of sexual harassment itself, these courts have held that the conduct alleged must be "sexualized" or "sexual" in nature in order to state a claim of sexual harassment. *See Singh*, 750 F.Supp.3d 250; *Smith v. Meta Platforms, Inc.*, No. 24-cv-4633 2025 WL 2782484, *8 (S.D.N.Y. Sept. 30, 2025); *Montanus v. Columbia Mngmt Invest. Advisers, LLC*, 25-cv-2798, 2025 WL 2503326 (S.D.N.Y. Sept. 2, 2025) (PAE).

Applying these standards to the instant matter, and as outlined below, Plaintiff cannot transform her gender discrimination claim to a sexual harassment claim to circumvent her obligations under the Arbitration Agreement. Plaintiff's claim that she was treated "differently" than others because of her gender fails to allege conduct constituting sexual harassment, and she fails to allege a single comment or behavior sexualized in nature.

**A. The EFAA Does not Apply to All Gender Discrimination Claims**

Plaintiff generally asserts that Defendant maintained a work environment where, because of her gender, she was treated "differently," than other employees and her "manager subjected her to sexual and age-based harassment." (*See Doc* 1, ¶1). Throughout her causes of action, she vaguely refers to a "hostile work environment" based on her sex. (*Id.*, First Cause of Action, *Gender Discrimination* (Title VII), ¶82, Fourth Cause of Action, *Discrimination* (NYSHRL), ¶94, Fifth Cause of Action, *Discrimination* (NYCHRL), ¶98, Sixth Cause of Action, *Discrimination* (NJLAD), ¶102). In fact, nearly the entirety of Plaintiff's 134-Count Complaint is premised on the

argument that because she was allegedly treated less well than other because of her gender, she was subject to both gender discrimination and a hostile work environment based on sex. "Treated differently than others," however, is no longer the standard for establishing conduct constituting sexual harassment.

An analysis of the NYCHRL, which provides the "most lenient applicable liability standard" of the New York statutes and Title VII, demonstrates that the EFAA is not triggered but Plaintiff's NYSHRL and Title VII claims. *Singh*, 750 F. Supp. 3d at 255, 259; *Yost*, 657 F. Supp. at 583 ("It follows that the [sexual harassment] claims to the same effect under Title VII and the NYSHRL also fail" after finding the Complaint failed "to allege a plausible claim of sexual harassment under the NYCHRL"). It is axiomatic that the NYCHRL does not define the term sexual harassment. Until recently, New York Courts have either declined to address the statutory silence directly, or circumvented its ambiguity by treating sexual harassment and gender discrimination as the same under the statute. *See e.g., Mihalik v. Credit Agricole Cheuvreux N.Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Indeed, because the NYCHRL protects employees against both discrimination and harassment, the distinction between "gender discrimination" and "sexual harassment" under the statute had never presented as a dispositive legal issue. *Singh*, 750 F.Supp.3d at 256.[2] However, the passage of the EFAA, and the deferential definition of "sexual harassment dispute" therein, propelled the distinction between "sexual harassment" and the broader category of "gender discrimination" under the NYCHRL to a decisive juncture, as fully examined by the Court in *Singh*, supra. *Ibid.* There, the court held that sexual harassment is a

[2] Explaining in full that: "In interpreting alleged discrimination under the NYCHRL, state and federal courts have yet to draw a clear line between what constitutes 'sexual harassment' and what constitutes 'gender discrimination.' Before the EFAA was passed, such a distinction was never at issue, because the NYCHRL, based on its clear textual meaning, protects employees against both "discrimination *and* "sexual harassment… However, with the passage of the EFAA, the difference between 'sexual harassment' and the broader category of 'gender discrimination' under the NYCHRL now comes to a head." *Id.* at 256.

separate subcategory within the broader category of gender-based discrimination. *Id.* at 257 ("These actions directed at Singh, assumed to be true at this stage of litigation, surely constitute gender discrimination under the NYCHRL. But not all gender discrimination is sexual harassment").

Following *Singh*, other courts have had the occasion to revisit this question on several occasions, and have consistently agreed that gender discrimination and sexual harassment must be viewed differently for purposes of invoking the EFAA. *See e.g., Meta Platform*, 2025 WL 2782484, at *9 ("Ultimately, because the Court concludes that a party invoking the EFAA must actually allege facts that constitute sexual harassment, [plaintiff's] non-sexual allegations of gender discrimination…do not suffice to render the [arbitration agreement] unenforceable"); *Montanus*, 2025 WL 2503326, at *7 ("the EFAA does not exempt claims of gender discrimination from arbitration agreements. It applies only to claims of sexual harassment (or sexual assault)"), *citing Cornelius v. CVS Pharmacy, Inc.*, No. 23-cv-1858, 2023 WL 6876925, at *4 (D.N.J. Oct. 18, 2023), ("[T]he…complaint specifically alleges gender discrimination claims and facts to support discrimination based on sex…[It] does not include a sexual harassment claim"), *aff'd in part, vacated in part, remanded,* 133 F.4th 240 (3d. Cir. 2025), *cert. denied*, No. 25-139, 2025 WL 2824164 (Oct. 6, 2025); *Owens v. PCW*, 786 F.Supp.3d 831, 844 (S.D.N.Y. 2025), *appeal filed,* No. 25-1717 (2d. Cir. July 14, 2025) ("The Court agrees with Judge Oetken [in *Singh*] that the most straightforward reading of the NYCHRL is that sexual harassment is a subcategory of conduct within the broader category of gender-based discrimination").

Based on the foregoing, Plaintiff cannot rely upon her gender-discrimination allegations, or her claims that she was treated "differently" because of her gender to plausibly plead a claim sexual harassment.

**B. Plaintiff Has Failed to Plausibly Plead a Claim for Sexual Harassment**

To assess whether a case alleges conduct constituting sexual harassment under the NYCHRL so as to invoke the EFAA, "the Court must determine the meaning of sexual harassment." *Meta Platforms*, 2025 WL 2782484, at *8. Courts addressing this question have near-uniformly held that such conduct must be sexualized in nature, and involve, *inter alia,* unwanted sexual advances, requests for sexual favors or other interactions of a sexual nature. *Id.* Plaintiff has not plead a claim for sexual harassment under this standard.

Simply put, Plaintiff fails to allege a single comment or behavior that constitutes sexual harassment. Instead, her Complaint details alleged instances of gender discrimination. Thus, the Complaint fails to plausibly allege conduct that, if taken as true for purposes of this stage of litigation, would actually constitute sexual harassment, because the comments are not sexualized in nature.

1. *Singh* Analysis

The scope of conduct constituting sexual harassment for purposes of the NYCHRL was first analyzed at length by the *Singh* Court, which relied on New York City Commission on Human Rights (the "Commission") instructional materials, including online resources and training modules, for guidance. *See Singh,* 750 F.Supp.3d at 256. The Court found that within these materials,[3] the Commission defined "sexual harassment" as: "unwelcome verbal or physical behavior based on a person's gender [which] can include unwanted touching; offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's appearance; sexualizing the work environment with other items; or telling sexual jokes." *Id.* at 256.

[3] See *Stop Sexual Harassment Act*, NYC Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (*last visited by the Court* Aug. 15, 2024).

The *Singh* Court also examined Commission-published posters intended to illustrate sexual harassment, all of which included some form of sexual flirtation, sexual jokes, or other sexual actions. *Ibid.* The "example" poster,[4] lists as "Some Examples of Sexual Harassment" the following: "unwelcome or inappropriate touching of employees or customers; threatening or engaging in adverse action after someone refuses a sexual advance; making lewd or sexual comments about an individual's appearance, body, or style of dress; conditioning promotions or other opportunities on sexual favors; displaying pornographic images, cartoons, or graffiti on computers, emails, cell phones, bulletin boards, etc.; making sexist remarks or derogatory comments based on gender." *Id. at 257.*

Applying this standard to the facts before it, which included a single allegation that the CEO had questioned Singh about how her pregnancy would impact her commitment to her job and asked for details regarding her post-leave childcare plans, the Court found the comment insufficient to invoke the EFAA. Unlike the plaintiff in *Singh*, Plaintiff fails to allege even a single comment or behavior rooted in sexual harassment. Even assuming *arguendo* that Temple's alleged behaviors of differential treatment of Plaintiff compared to her male peers establishes gender discrimination, which Defendant does not concede, they do not rise to the level of inappropriate conduct required to establish a claim for sexual harassment.

2. <u>Post-*Singh* Analyses</u>

Following *Singh*, several courts have further addressed the definition of sexual harassment under the EFAA, the majority of which have similarly emphasized the requirement that the conduct alleged be sexualized in nature.

---

[4] *See Stop Sexual Harassment Act Notice*, NYC Human Rights, https://www.nyc.gov/assets/cchr/downloads /pdf/materials/SexHarass_Notice8.5x14-English.pdf/ (*last visited by the Court* Aug. 15, 2024).

For instance, the scope of conduct constituting sexual harassment was analyzed in dicta by Judge Cronan in *Meta Platforms,* 2025 WL 2782484, *8. In holding that "sexual harassment must be sexual in nature," that court looked to the definition of Sexual Harassment in Black's Law Dictionary (12th ed. 2024). Black's Law Dictionary defines sexual harassment as "verbal or physical maltreatment, pestering or abuse of a sexual nature, including lewd remarks, salacious looks, and unwelcome touching"). *Ibid.*

Judge Engelmayer similarly analyzed the definition of "sexual harassment" under the EFAA in *Montanus, supra*. There, the court granted defendant's motion to dismiss, finding that only those claims arising prior to the effective date of the Act constituted sexual harassment. In granting the motion, Judge Engelmayer emphasized that sexual harassment claims must, by definition, be sexual in nature, explaining that: "the remarks at issue that post-date the EFAA lack the sexualized content required to constitute sexual harassment under the EFAA." *Montanus*, 2025 WL 2503326, *7, *citing*, *inter alia*, *Smith v. Boehringer-Ingelheim Pharm. LLC,* No. 24-cv-1266, 2025 WL 2403042, at *9 (D. Conn. Aug 19, 2025) (gender discrimination claims absent, "unwanted sexual advances, requests for sexual favors, or any other interaction of a sexual nature, do not trigger the EFAA); *Moulds v. Skillcycle, Inc.*, No. 23-cv-4873, 2024 WL 2206464, at *1n.1 (E.D. Pa. Mar. 27, 2024) (granting motion to compel arbitration and explaining that, "as Defendants previously respond[ed], under federal law 'sex discrimination differs from sexual harassment…[S]ex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or verbal or physical contact of a sexual nature'" (internal citations omitted)). Plaintiff failed to allege a single sexually motivated comment or action, so she failed to plausibly plead a claim of sexual harassment under the NYCHRL, NYSHRL, and Title VII.

3. Plaintiff's Has Not Plausible Plead a Sexual Harassment Claim Under NJLAD

Similar to New York courts' analysis, Plaintiff's allegations of a hostile work environment based on sex do not rise to the level of sexual harassment to evade arbitration under the EFAA in New Jersey. *Cornelius,* 2023 WL 6876925, at *3 (D.N.J. Oct. 18, 2023) (finding the EFAA did not bar arbitration under NJLAD because "[s]ex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or other verbal or physical contact of a sexual nature"). Plaintiff's Complaint merely contains allegations related to differential treatment by her supervisor Temple, constituting claims of gender discrimination. Plaintiff's Complaint does *not* contain any verbal or physical conduct sexual in nature. *Id.* at *4 ("Plaintiff does not allege sexual harassment claims in her complaint nor does she allege facts to suggest that Patel's actions were sexually motivated.").

Accordingly, Plaintiff's alleged differential treatment, without mention of a single sexualized comment or behavior, do not establish conduct constituting sexual harassment under NYCHRL, and accordingly NYSHRL and Title VII, in addition to NJLAD. They lack the sexualized content or conduct required to invoke the protections of the EFAA.

**CONCLUSION**

For the reasons outlined in detail herein, Defendant respectfully submits that the Court should compel Plaintiff to arbitrate all of her claims in accordance with the plain language of her Arbitration Agreement and stay this action pending arbitration. Plaintiff entered into a valid, enforceable arbitration agreement when she electronically signed through DocuSign and affirmatively assented to the terms of her Arbitration Agreement. The Arbitration Agreement covers all viable alleged causes of action raised by Plaintiff, and she has no grounds upon which

to invoke the EFAA to block arbitration. She is, therefore, constrained to pursue her claims before a neutral arbitrator, as dictated by the FAA and set forth in her binding Arbitration Agreement.

Respectfully submitted,

**FISHER & PHILLIPS LLP**
*Attorneys for Defendant*

By: ______________________________
Colleen Tandy, Esq.
Kathryn K. Mize, Esq.
E-mail: ctandy@fisherphillips.com
kmize@fisherphillips.com

Dated: January 23, 2026