UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TRICIA LANE,

Plaintiff,

- against -

SALESFORCE, INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 1:25-cv-9707 (DEH) (HJR)

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

VLADECK, RASKIN & CLARK P.C.
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300

Of Counsel:
Anne L. Clark

#1029369

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 5

I. APPLICABLE LEGAL STANDARD ........ 5

II. PLAINTIFF ALLEGED CONDUCT COVERED BY THE EFAA ........ 8

A. Sexual Harassment Under New York City Law ........ 10

B. Federal Law Sexual Harassment Standard Is in Accord ........ 15

C. Sexual Harassment Under New Jersey Law ........ 17

D. Plaintiff's Retaliation Claims Independently Support Application of the EFAA ........ 18

CONCLUSION ........ 20

CERTIFICATE OF COMPLIANCE ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Albany Area Builders Ass'n v. Town of Guilderland,
74 N.Y.2d 372 (N.Y. 1989) ....................8

AT&T Mobility LLC v. Concepcion,
563 U.S. 333 (2011)....................7

Bacchus v. N.Y. City Dep't of Educ.,
137 F. Supp. 3d 214 (E.D.N.Y. 2015) ....................15

Baldwin v. TMPL Lexington LLC,
23 Civ. 9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024)....................6

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)....................7

Brazzano v. Thompson Hine LLP,
No. 24-CV-01420 (ALC)(KHP), 2025 WL 963114 (S.D.N.Y. Mar. 31, 2025)....................13

Cardenas v. F.D. Thoams, Inc.,
No. 2:24 Civ. 01814 (DAD) (JDP), 2025 WL 418753 (E.D. Cal. Feb. 26, 2025) ....................7

Carrillo v. Empire Hotel Servs., LLC,
No. 2:22-CV-03273 (WJM), 2023 WL 3993767 (D.N.J. June 14, 2023) ....................17

Clay v. FGO Logs., Inc.,
751 F. Supp. 3d 3 (D. Conn. 2024)....................19

Cobb v. Am. Urban Radio Networks LLC,
24-CV-1305 (PAE), 2025 WL 641437 (S.D.N.Y. Feb. 27, 2025) ....................19

Cornelius v. CVS Pharmacy Inc.,
133 F.4th 240 (3d Cir. 2025) ....................17

Cornelius v. CVS Pharmacy, Inc.,
23-01858, 2023 WL 6876925 (D.N.J. Oct. 18, 2023) ....................17

Delaware v. Pennsylvania,
598 U.S. 115 (2023)....................9

Delirium TC LLC v. Dang,
No. 1:23 Civ. 00383, 2024 WL 1513878 (Tex. App. Apr. 9, 2024) ....................7

Delo v. Paul Taylor Dance Found., Inc.,
685 F. Supp. 3d 173 (S.D.N.Y. 2023)....................11, 13

Diaz-Roa v. Hermes L., P.C.,
757 F. Supp. 3d 498 (S.D.N.Y. 2024).................... *passim*

Digital Realty Tr., Inc. v. Somers,
583 U.S. 149 (2018)....................8

Ding v. Structure Therapeutics, Inc.,
No. 24-CV-01368-JSC, 2025 WL 405699 (N.D. Cal. Feb. 5, 2025) ....................11, 13

Doe v. Second Street Corp.,
105 Cal. App. 5th 552 (Cal. Ct. App. 2d Dist. 2024) ....................7

Edelman v. NYU Langone Health Sys.,
141 F.4th 28 (2d Cir. 2025) ....................12

Encarnacion v. Isabella Geriatric Ctr., Inc.,
2014 WL 7008946 (S.D.N.Y. Dec. 12, 2014) ....................14

Espinoza v. CGJC Holdings, LLC,
No. 23-CV-9133 (DLC), 2025 WL 2430672 (S.D.N.Y. Aug. 22, 2025) ....................12

Gregory v. Daly,
243 F.3d 687 (2d Cir. 2001)....................16

Holland-Theilen v. Space Exploration Tech. Corp.,
No. 2:24 Civ. 06972 (JAK), 2025 WL 2190619 (C.D. Cal. July 11, 2025) ....................7

J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision,
76 F.4th 32 (2d Cir. 2023) ....................9

Kaytor v. Elec. Boat Corp.,
609 F.3d 537 (2d Cir. 2010)....................15

Keles v. Psarelli,
2023 WL 5110157 (E.D.N.Y. Aug. 9, 2023)....................15

King v. Aramark Svcs., Inc.,
96 F.4th 546 (2d Cir. 2024) ....................16, 17

King v. Aramark Svcs., Inc.,
No. 1:19 Civ. 77, 2022 WL 1460238 (N.D.N.Y. May 9, 2022)....................16

Lambert v. New Start Cap. LLC,
No. 1:24-CV-8055-GHW, 2025 WL 2295254 (S.D.N.Y. Aug. 7, 2025)....................18

Lebowitz v. New York City Dep't of Educ.,
407 F. Supp. 3d 158 (E.D.N.Y. 2017) ....................................................................15

Lehmann v. Toys R Us, Inc.,
132 N.J. 587 (1993) .........................................................................................17, 18

Michael v. Bravo Brio Rest. LLC,
No 23-3691 (RK), 2024 WL 2923591 (D.N.J. June 10, 2024)...............................................17

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
715 F.3d 102 (2d Cir. 2013)...........................................................................................10

Mohamad v. Palestinian Auth.,
566 U.S. 449 (2012).........................................................................................................9

Morgan v. Sundance, Inc.,
596 U.S. 411 (2022).........................................................................................................6

Moulds v. Skillcycle, Inc.,
No. 23-cv-4873, 2024 WL 2206464 (E.D. Pa. Mar. 27, 2024) ...............................................14

Newton v. LVMH Moet Hennessy Louis Vuitton Inc.,
746 F. Supp. 3d 135 (S.D.N.Y. 2024), vacated in part on other grounds by
2025 WL 1826583 (S.D.N.Y July 2, 2025) ...........................................................................19

Olivieri v. Stifel, Nicolaus & Co., Inc.,
112 F.4th 74 (2d Cir. 2024) ..................................................................................6, 18, 19

Oncale v. Sundowner Offshore Servs., Inc.,
523 U.S. 75 (1998)...........................................................................................................15

Owens v. PricewaterhouseCoopers LLC,
786 F. Supp. 3d 831 (S.D.N.Y. 2025)............................................................................ *passim*

Paige v. Atrion Comm. Resources, Inc.,
3:17-cv-00472-PGS-TJB, 2019 WL 5846799 (D.N.J. Nov. 7, 2019) ....................................17

Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,
369 F.3d 645 (2d Cir. 2004)..............................................................................................7

Puris v. TikTok, Inc., et al.,
No. 24CV944 (DLC), 2025 WL 343905 (S.D.N.Y. Jan. 30, 2025) .......................................18

Raniola v. Bratton,
243 F.3d 610 (2d Cir. 2001)...............................................................................................16

Singh v. Meetup LLC,
750 F. Supp. 3d 250 (S.D.N.Y. 2024)....................................................................................13

Smith v. Meta Platforms, Inc.,
No. 24 CIV. 4633 (JPC), 2025 WL 2782484 (S.D.N.Y. Sept. 30, 2025)................................13

Stegemann v. United States,
132 F.4th 206 (2d Cir. 2025) ......................................................................................8

Steinberg v. Capgemini Am., Inc.,
No. 22-489, 2022 WL 3371323 (E.D. Pa. Aug. 16, 2022) ......................................................7

Summa v. Hofstra Univ.,
708 F.3d 115 (2d Cir. 2013)........................................................................................19

Sumner v. U.S. Postal Serv.,
899 F.2d 203 (2d Cir. 1990)........................................................................................19

Syeed v. Bloomberg L.P.,
568 F. Supp. 3d 314 (S.D.N.Y. 2021), vacated and remanded on other grounds
by 2024 WL 2813563 (2d Cir. June 3, 2024) .................................................................15

Thomas v. Pooh Bah Enterprises, Inc.,
No. 25 Civ. 77, 2025 WL 2084159 (N.D. Ill. July 24, 2025) ...................................................7

Vaigasi v. Solow Mgmt. Corp.,
2014 WL 1259616 (S.D.N.Y. Mar. 24, 2014) .................................................................15

**Statutes**

Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021,
9 U.S.C. § 401 et seq..................................................................................... *passim*

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. .................................................5

Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. .........................................................5

Title VII of the Civil Rights Act of 1964 42 U.S.C.§ 2000e-1 et seq..............................................5

New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ............................................5

New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq.
("NJLAD") ..................................................................................................5, 17, 18

New York Labor Law § 194 .........................................................................................5

New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ..........................................................5

New York City Human Rights Law, New York City Admin. Code, § 8–101 et
seq. ............................................................................................................. *passim*

**Other Authorities**


168 Cong. Rec. H991-93 (daily ed. Feb. 7, 2022) ....................9

H.R. Rep. No. 117-234 (2022) ....................9

Sexual Harassment, N.Y. STATE DIV. OF HUM. RTS., https://dhr.ny.gov/system/files/ ....................12

NEW YORK STATE Sexual Harassment Prevention Training, THE STATE OF NEW YORK, https://www.ny.gov/sites/default/files/2023-04/SexualHarassmentPreventionTrainingSlides.pdf ....................12

Sexual Harassment Prevention Model Policy and Training, THE STATE OF NEW YORK, https://www.ny.gov/combating-sexual-harassment-workplace/sexual-harassment-prevention-model-policy-and-training ....................12

Take the Training in English, NYC Human Rights, https://www.nyc.gov/assets/c chr/training/english/index.html ....................11

*Sexual*, Merriam-Webster, https://merriam-webster.com/dictionary/sexual (last visited February 5, 2026) ....................8

*Sexual*, Dictionary.com, https://www.dictionary.com/browse/sexual (last visited February 5, 2026) ....................8

https://perma.cc/7R4X-8YLG ....................12

https://perma.cc/F27A-JBPX ....................12

https://perma.cc/MV8J-XAAY ....................12

## PRELIMINARY STATEMENT

Congress passed the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. § 401 et seq. ("EFAA"), with the purpose to combat "'the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers.'" Diaz-Roa v. Hermes L., P.C., 757 F. Supp. 3d 498, 530 (S.D.N.Y. 2024) (quoting H.R. Rep. 117- 234 at 4). Congress acted with an "expansive intent" that "all parties" who assert claims relating to sexual harassment be "free from forced arbitration." Id.

Consistent with that purpose, plaintiff Tricia Lane, a former Regional Vice President ("RVP") with defendant Salesforce, Inc., filed this action. Plaintiff sought to remedy, inter alia, the rampant discrimination, including gender-based harassment, she endured, and the company's retaliation against her for reporting harassment. Although Salesforce insists that Lane must litigate her claims of harassment in secret arbitration, the EFAA grants Lane the option to file in court. This Court should vindicate her right to do so.

Throughout its brief ("Def. Br."), defendant ignores the clear dictates and purposes of the EFAA and attempts to force Lane to arbitrate based on a misguided legal theory. Defendant meritlessly argues that Lane cannot prevail on a sexual harassment claim if the harassment is not romantic or lewd, even though the applicable laws (and the Supreme Court) are clear that conduct constituting sexual harassment need not be sexual in nature.

A careful analysis of the text and history of the applicable laws demonstrates that there is no basis for defendant's contrived standard that conduct must be lewd or romantic to be protected under the EFAA and that Lane's case falls within EFAA's scope. This Court thus should deny defendant's motion to compel arbitration.

STATEMENT OF FACTS

Lane, a 64-year-old woman, was an experienced sales manager with an excellent track record when Salesforce recruited her to a role an individual contributor. (Complaint ("Compl.") ¶¶ 11-12, 14-15, 17) In July 2017, she joined Salesforce as an Account Executive in Strategic Enterprise Sales. (Id. ¶ 19) Although Lane's territory was widely recognized as undesirable, Lane turned it into a success and her outstanding performance was repeatedly recognized by Salesforce. (Id. ¶¶ 20-22) In August 2019, Salesforce promoted Lane to RVP managing the Eastern Enterprise team, covering the Eastern United States. (Id. ¶ 23) Once again, Lane took a troubled territory and turned it, and the salespeople in it, successful, and Salesforce recognized her accomplishments, including with positive reviews, merit increases, and awards of stock options. (Id. ¶¶ 24-30)

Lane's positive experience working for Salesforce changed in February 2024. Salesforce realigned the territories, giving Lane's best accounts and salespeople to three younger men, and leaving her with troubled accounts, struggling employees, and open headcount. (Id. ¶¶ 32-33) At the same time, Salesforce assigned Lane to a new Supervisor, Area Vice President Rebecca Temple. (Id. ¶ 35)

For the next several months, Temple treated Lane worse than the three younger men who reported to Temple. (Id. ¶¶ 36-48) Among other things, Temple criticized Lane and blamed her for things Temple knew were not her fault, including criticizing Lane to other employees and clients (id. ¶ 39-40, 44); claimed Lane's success in beating a forecast was actually a fault (id. ¶ 45); berated Lane in front of her male peers (id.); excluded Lane from business communications relating to her responsibilities, which undermined Lane with her team (id. ¶ 46); and avoided Lane while spending time with the younger men (id. ¶¶ 47-48). In addition, Kimberly Bradberry, Senior Vice President for Nonprofit Sales and Temple's supervisor, treated men differently in meetings, joking

around with them and letting mistakes slide, while being much more demanding of the women in the meetings. (Id. ¶ 50)

At least three times in April and May 2024, Lane told Temple she was concerned with the way Temple treated her, and said that she thought Temple was targeting her and treating her differently from the rest of the team, which was the three younger men. (Id. ¶ 49) Temple refused to acknowledge Lane's concerns. (Id.)

On May 20, 2024, Lane made a complaint to Human Resources ("HR") about Temple's treatment of her. (Id. ¶ 53) Later that day, Temple told Lane that she was putting her on a Performance Improvement Plan ("PIP"), falsely claiming that they had had prior discussions about performance issues, and told Lane that her only alternative was to accept a prompt exit package. (Id. ¶¶ 51-52) Lane followed up with HR on May 22, 2024, providing a detailed complaint and stating that Temple was discriminating against her and creating a hostile work environment. (Id. ¶ 53) She provided additional information to HR on May 24, 2024. (Id.)

Temple's treatment of Lane from March through June 2024 created a hostile work environment on the basis of sex and age and caused Lane extreme stress and health issues. (Id. ¶ 54) On June 10, 2024, Temple submitted written comments making false accusations about Lane's performance against the PIP and in general. (Id. ¶ 55) On June 13, 2024, Lane sent three emails to Temple, copying more senior management, refuting Temple's accusations and noting that she had raised concerns about Temple's treatment of her. (Id. ¶ 57)

On June 14, 2024, Lane saw her doctor, who insisted Lane take medical leave immediately. (Id. ¶ 58) On June 16, 2024, Lane wrote to an Employee Relations representative who had reached out to her about her complaints; Lane advised him that she was on medical leave because of how she had been treated and provided additional information about her claims, stating that she thought



#1029369

she was treated differently from her younger, male peers. (Id. ¶ 59) On November 12, 2024, while Lane was still on medical leave, her attorney wrote to Salesforce asserting violations of civil rights laws. (Id. ¶¶ 61-62)

When Lane was ready to return from leave in mid-December 2016, Salesforce created obstacles to her return and to obtaining an accommodation, delaying her return until January 21, 2025, which cost her over a month of pay and benefits. (Id. ¶¶ 63-69) Lane also faced numerous obstacles to getting back to being productive, including ones created by Temple. (Id. ¶¶ 70-72)

On February 20, 2025, the HR representative responsible for Lane's internal complaint told her that he had done "due diligence" and did not find anything that violated Salesforce policies. (Id. ¶ 74) Lane questioned that statement, noting that she had provided detailed examples of discrimination and a hostile environment, and witnesses who could corroborate it. (Id.) She said there could be no question that she was treated differently from her younger, male peers. (Id.) She also provided him with examples of Temple's continued negative treatment in the nine days since Lane's return from medical leave. (Id.)

Thereafter, Temple continued to treat Lane worse than her male peers. Among other things, Temple assigned Lane data entry busy work that she did not assign to the men and allowed her only one day to complete administrative tasks that she provided the men several days to complete. (Id. ¶ 75)

On February 25, 2025, Lane filed an EEOC charge. (Id. ¶ 77)

On or about March 28, 2025, Temple reinstituted the PIP, but changed the specifics of with whom Lane should be meeting, demonstrating how arbitrary the requirements were. (Id. ¶ 78) Lane explained to Temple how the meeting requirements were not possible and questioned whether her male peers had to meet such requirements. (Id.) Lane then exceeded her interim financial plan

and came very close to her interim quota, with deals closing that would have put her over quota. (Id. ¶ 79) Lane's male peers were not required to meet their interim financial plans or quotas. (Id.) Despite this, on April 30, 2025, Temple fired Lane via email on a day she knew Lane was out sick. (Id. ¶ 80) Lane did not see the email until colleagues reached out to her to say they were sorry to hear it was her last day with Salesforce. (Id.)

Plaintiff initiated this action on November 21, 2025 (Dkt No. 1). Plaintiff brings claims to remedy gender discrimination, including a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq. ("Title VII"); age discrimination, including a hostile work environment, and retaliation in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); and sex, age, and disability discrimination, including a hostile work environment, and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); the New York City Human Rights Law, New York City Admin. Code, § 8–101 et seq. ("NYCHRL"); and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD"). Lane also brings claims for Salesforce paying her less than less experienced, younger employees in violation of New York Labor Law § 194 ("NY EPA"), and the New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ("NJ EPA").

## ARGUMENT

## I. APPLICABLE LEGAL STANDARD

Plaintiff does not dispute that, but for the EFAA, she would have to resolve her claims against Salesforce in arbitration.

The EFAA amends the Federal Arbitration Act as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA expressly defers to the "applicable . . . State law" to determine what "constitute[s] sexual harassment." 9 U.S.C. § 401(4). "A court, rather than an arbitrator, determines whether the EFAA applies, 'irrespective of whether the party resisting arbitration challenges the arbitration agreement' and 'irrespective of whether the agreement purports to delegate such determinations to an arbitrator.'" Baldwin v. TMPL Lexington LLC, 23 Civ. 9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) (quoting 9 U.S.C. § 402(b)).

Defendant argues that the law requires interpretations that favor arbitration. (Def. Br. 7-8). Not so. As the Supreme Court has made clear, the FAA does not prefer arbitration. Instead, the policy favoring arbitration "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate to place such agreements upon the same footing as other contracts." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022) (citation omitted). In other words, the FAA is aimed at preventing courts from "using custom-made rules to tilt the playing field in favor (or against) arbitration," id., not an expression of preference in either direction.

Even if there were such a preference, it would not apply to the EFAA, which "is the first major amendment in the history of the FAA," and "is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements." Olivieri v. Stifel, Nicolaus & Co., Inc., 112 F.4th 74, 84 (2d Cir. 2024) (citation omitted). In other words, "Congress articulated an entirely different intent when it amended the FAA by adopting the EFAA—to contract arbitrability, not to expand it. In the EFAA context, therefore, a 'heavy presumption' of arbitrability is not

appropriate." Doe v. Second Street Corp., 105 Cal. App. 5th 552, 572 (Cal. Ct. App. 2d Dist. 2024) (emphasis in original); see also Steinberg v. Capgemini Am., Inc., No. 22-489, 2022 WL 3371323, at *2 (E.D. Pa. Aug. 16, 2022) (holding that the EFAA was intended to "pull[] back on the long held presumption toward arbitration where sexual harassment is concerned"). Defendant identifies nothing in the EFAA's text suggesting that it was meant to be construed narrowly.[1]

Courts have disagreed on what pleading standard is required for the EFAA to apply. In Yost v. Everyrealm, Inc., the court held that the EFAA implicitly incorporates the familiar Twombly/Iqbal "plausibility" standard. 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). Under that standard, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In Diaz-Roa, the court parted with Yost and concluded that "a plaintiff need only plead nonfrivolous claims relating to . . . conduct alleged to constitute sexual harassment[.]" 757 F. Supp. 3d at 533. The Complaint easily meets either of these permissive standards.[2]

---

[1] Tellingly, all of the cases defendant cites in support of the purported policy in favor of arbitration (Def. Br. 7-8) predate the EFAA and none hold that a narrow construction applies to the EFAA. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011); Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645 (2d Cir. 2004).

[2] Defendant ignores (Def. Br. 12-13) Diaz-Roa and cases that have relied upon it. See, e.g., Thomas v. Pooh Bah Enterprises, Inc., No. 25 Civ. 77, 2025 WL 2084159, at *4 (N.D. Ill. July 24, 2025); Holland-Theilen v. Space Exploration Tech. Corp., No. 2:24 Civ. 06972 (JAK), (RAOx), 2025 WL 2190619, at *12 (C.D. Cal. July 11, 2025); Cardenas v. F.D. Thoams, Inc., No. 2:24 Civ. 01814 (DAD) (JDP), 2025 WL 418753, at *4 (E.D. Cal. Feb. 26, 2025); Delirium TC LLC v. Dang, No. 1:23 Civ. 00383, 2024 WL 1513878, at *7 (Tex. App. Apr. 9, 2024).While Diaz-Roa is on appeal, defendant did not challenge the pleading standard. (Second Circuit, No. 24-3223, Dkt. #28)

## II. PLAINTIFF ALLEGED CONDUCT COVERED BY THE EFAA

Defendant's sole argument regarding application of the EFAA is that it requires pleading conduct of a lewd or romantic nature. (Def. Br. 11-19) Its argument is inconsistent with the plain meaning and "expansive intent" of the EFAA. See Diaz-Roa, 757 F. Supp. 3d at 536 n.12.

The EFAA specifically defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."[3] 9 U.S.C.A. § 401. Generally, "when a statute includes an explicit definition, we must follow that definition." Digital Realty Tr., Inc. v. Somers, 583 U.S. 149, 160 (2018).[4] Because the EFAA defines a sexual harassment dispute as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable . . . State law," Congress clearly intended for the term "sexual harassment" to encompass sexual harassment claims as defined by applicable state laws—here, using the most expansive law, the NYCHRL. See Stegemann v. United States, 132 F.4th 206, 212-14 (2d Cir. 2025) (holding that statutory definition referencing state law encompassed offense as defined by state law).

Because, as set forth below, the NYCHRL (like state and federal law) does not require romantic or lewd conduct to state a sexual harassment claim, that should end the inquiry.

---

[3] It is a longstanding and "familiar principle" that local laws are a subset of state law. Albany Area Builders Ass'n v. Town of Guilderland, 74 N.Y.2d 372, 376 (N.Y. 1989). Courts have unanimously defined "state law" for these purposes to encompass the NYCHRL. See e.g., Owens v. PricewaterhouseCoopers LLC, 786 F. Supp. 3d 831, 843, n.2 (S.D.N.Y. 2025).

[4] Thus, defendant's citation to a dictionary definition (Def. Br. 18), rather than the developed law, is misguided. In addition, defendant's argument ignores that dictionaries also define "sexual" as "of, relating to, or associated with sex or sexes," *Sexual*, Merriam-Webster, https://merriam-webster.com/dictionary/sexual (last visited February 5, 2026), or "occurring between or involving the sexes." *Sexual*, Dictionary.com, https://www.dictionary.com/browse/sexual (last visited February 5, 2026).

Although "reliance on legislative history is unnecessary" given the statute's "unambiguous language," Mohamad v. Palestinian Auth., 566 U.S. 449, 459 (2012) (citation omitted), the EFAA's legislative history supports plaintiff's interpretation, see J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision, 76 F.4th 32, 38-39 (2d Cir. 2023) (explaining that although "legislative history cannot overcome the plain meaning of the text" it "can be useful to understanding the context and the language adopted by the statute").

Significantly, Congress initially considered—and ultimately rejected—a version of the bill mirroring defendant's preferred interpretation. Specifically, an initial bill defined a "sexual harassment dispute" as narrowly limited to erotic conduct, H.R. Rep. No. 117-234, at 21 (2022), but the statute passed only after an amendment changed the definition of "sexual harassment dispute" to encompass "applicable Federal, Tribal, or State law." 168 Cong. Rec. H991-93 (daily ed. Feb. 7, 2022). This change was a response to concerns that the earlier draft was "singular[ly] focus[ed] on sexual harassment involving unwelcome sexual advances, propositions, and sexual attention" and would still require the arbitration of claims of harassment that are "not sexual in nature but . . . motivated by a sex-based animus or hostility," even if such claims would otherwise be viable under existing law. Id. at H991 (statement of Rep. Robert Scott). The legislative history emphasizes that "[t]his kind of harassment . . . can involve offensive and derogatory comments about women working in male-dominated industries, physically intimidating conduct directed at men who fail to conform to stereotypical gender norms," and other forms of "non-sexual, sex-based harassment that have been recognized by the Supreme Court." Id.

Given this illustrative drafting history, see Delaware v. Pennsylvania, 598 U.S. 115, 139 (2023)(concluding that drafting history bolstered interpretation of statute), the EFAA's

intentionally expansive definition clearly was meant to afford Lane and others who face similar gender-based harassment their day in court.

A. Sexual Harassment Under New York City Law

Defendant acknowledges that the NYCHRL provides the most lenient liability standard among the New York and federal statutes. (Def. Br. 14) Despite the NYCHRL's expansive scope, defendant argues that not all sex discrimination is sexual harassment and that all sexual harassment claims must include conduct of a lewd or romantic nature. (Def. Br. 14-18)

Defendant cites Owens, 786 F. Supp. 3d at 844, for the distinction between discrimination and harassment (Def. Br. 15), but ignores that opinion's thorough, well-reasoned analysis supporting its holding that sexual harassment claims under the NYCHRL need not be based on lewd or romantic conduct. 786 F. Supp. 3d at 845-48.

Under the NYCHRL, to allege sexual harassment, plaintiff need only plead that she was treated "less well than other employees because of her gender," or put differently, faced "unwanted gender-based conduct." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted). However, Lane's case does not require this Court to determine whether the standards for gender discrimination and sexual harassment under the NYCHRL for purposes of the EFAA are, in fact, coextensive. The court in Owens held that "conduct constituting sexual harassment is unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." Id. at 846. In doing so, the court explicitly distinguished claims involving "harassment" (such as Lane's) and the "terms and conditions" cases that it deemed outside the definition of harassment for EFAA purposes. Id. at 845 (citing Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27, 37, 39 (1st Dep't 2009)). In other words, discrete instances such as a firing would not fall within the Owens definition of sexual harassment under

the NYCHRL excluded from arbitration under the EFAA. Because Lane sufficiently pleads harassment based on such unwelcome conduct based on gender as prohibited under the test set out by the Owens court, this Court need not resolve whether all sexual harassment proscribed by the NYCHRL falls within the ambit of the EFAA.[5]

The Owens court's analysis, rejecting a lewd or romantic requirement, was amply supported by the NYC Commission on Human Rights ("City Commission"), whose interpretation must be considered as "persuasive authority." See Owens, 786 F. Supp. 3d at 845-46 (citing Wang v. James, 40 N.Y.3d 497, 501-02 (2023)). For example, the City Commission provides a Sexual Harassment Prevention Training that makes clear that sexual harassment is "behavior that is[] offensive, threatening, demeaning, embarrassing, or similar conduct" and is "connected to [] gender."[6] While "[t]his may include sexual behavior," there is no such requirement. Id. (emphasis added). Elsewhere, in the City Commission's sample notice that is required to be distributed to employees, the Commission lists examples of sexual harassment that "includes 'unwanted touching' with no qualifier as to whether the touching must be sexual in nature" as well as "derogatory comments based on gender" with no attempt to limit covered comments to those that are lewd or sexualized. Owens, 786 F. Supp. 3d at 846. While the City Commission's materials on sexual harassment also include examples of lewd or romantic conduct, they are just that—

[5] There is a basis for a finding that all conduct that satisfies the "less well" standard is sufficient for the EFAA. See, e.g., Delo v. Paul Taylor Dance Found., Inc., 685 F. Supp. 3d 173, 182 (S.D.N.Y. 2023) ("Under the NYCHRL, a plaintiff alleging . . . sexual harassment only needs show that she has been treated less well than other employees because of her gender, or, put differently, faced unwanted gender-based conduct" (citation modified)); Ding v. Structure Therapeutics, Inc., No. 24-CV-01368-JSC, 2025 WL 405699, at *3 (N.D. Cal. Feb. 5, 2025) (same).

[6] Take the Training in English, NYC Human Rights, https://www.nyc.gov/assets/cchr/training/english/index.html.

examples. See https://perma.cc/MV8J-XAAY (referring to "some examples" of sexual harassment); https://perma.cc/7R4X-8YLG (same); https://perma.cc/F27A-JBPX (describing background information concerning the examples used in the Commission's training materials). There is no basis for finding that these examples, which are plainly non-exhaustive, can be used to limit the definition of sexual harassment which courts interpreting the NYCHRL have consistently applied.[7]

And, as the Owens court correctly noted, "courts . . . have held that conduct constituting sexual harassment is adequately alleged [under the EFAA] even if little to none of the harassing conduct alleged is lewd or sexual." 786 F. Supp. 3d at 847 (citing Mitura v. Finco Services, Inc., 712 F. Supp. 3d 442, 453 (S.D.N.Y. 2024); Delo, 685 F. Supp. 3d at 184; Brazzano v. Thompson

[7] The NYSHRL yields the same result. As a threshold matter, the NYSHRL now mirrors the NYCHRL. See Edelman v. NYU Langone Health Sys., 141 F.4th 28, 49 (2d Cir. 2025); Espinoza v. CGJC Holdings, LLC, No. 23-CV-9133 (DLC), 2025 WL 2430672 (S.D.N.Y. Aug. 22, 2025) (applying same standard for NYSHRL and NYCHRL). Moreover, much like the City Commission, the New York State Division of Human Rights (the "Division"), the agency that administers the NYSHRL, provides guidance on how to interpret the NYSHRL. Sexual Harassment, N.Y. STATE DIV. OF HUM. RTS., https://dhr.ny.gov/system/files/documents/2024/04/nysdhr-sexual-harassment-brochure_0.pdf ("State Law Guidance"). In relevant guidance, the Division clearly provides that "[s]exually harassing conduct can consist of," among other things, "unwanted verbal or physical sexual advances, sexually explicit statements, or discriminatory remarks that are offensive or objectionable to the recipient." State Law Guidance (emphasis added).

New York State also requires sexual harassment training and provides a model training to employers. Sexual Harassment Prevention Model Policy and Training, THE STATE OF NEW YORK, https://www.ny.gov/combating-sexual-harassment-workplace/sexual-harassment-prevention-model-policy-and-training. The training could not be clearer: "[s]exual [h]arassment . . . [i]s not limited to sexual contact, touching or expressions of a sexually suggestive nature." NEW YORK STATE Sexual Harassment Prevention Training, THE STATE OF NEW YORK, https://www.ny.gov/sites/default/files/2023-04/SexualHarassmentPreventionTrainingSlides.pdf, at 4. Rather, "[s]exual [h]arassment . . . [i]ncludes harassment or discrimination on the basis of sex, [and] gender . . . ." Id. (emphasis added).

Hine LLP, No. 24-CV-01420 (ALC)(KHP), 2025 WL 963114, at *2, *7–8 (S.D.N.Y. Mar. 31, 2025)).[8]

Saleforce's contrary arguments are predicated chiefly on Singh v. Meetup LLC, 750 F. Supp. 3d 250 (S.D.N.Y. 2024), one of the few cases that strays from the otherwise uniform understanding of sexual harassment under the NYCHRL. Singh rejected the "less well" test in the context of the EFAA and conjured up a new vague standard for NYCHRL sexual harassment claims because it thought "collaps[ing] the difference between 'gender discrimination' and 'sexual harassment,' [would be] a step too far . . . absent contrary guidance from the state courts." 750 F. Supp. 3d at 259. However, as already explained, there is "contrary guidance." Singh's failure to defer to the New York agency's and courts' interpretation of the NYCHRL is thus fatal to its test, and it is not surprising that other courts interpreting New York law have declined to follow Singh. See, e.g., Owens, 786 F. Supp. 3d at 846 (rejecting Singh's requirement that conduct must be "romantic, sexual, or lewd" to constitute sexual harassment); Ding, 65 21 F. Supp. 3d at 902 (rejecting Singh's standard and concluding that "the Court will not stray from the definition of sexual harassment under the NYCHRL as stated by New York and federal courts, as well as the New York Human Rights Commission").[9]

[8] Defendant cites Brazzano only for the pleading standard (Def. Br. 12) and ignores Delo and Mitura.

[9] The "post-Singh" cases upon which defendant relies (Def. Br. 18), none of which are binding, are unpersuasive. For example, Montanus v. Columbia Mgmt. Inv. Advisers, LLC, replicates Singh's mistaken reasoning and is erroneous for the same reasons. No. 25 CIV. 2798 (PAE), 2025 WL 2503326, at *7 (S.D.N.Y. Sept. 2, 2025). Smith v. Meta Platforms, Inc., No. 24 CIV. 4633 (JPC), 2025 WL 2782484 (S.D.N.Y. Sept. 30, 2025), relied upon a dictionary definition and "a number of federal statutes [that] make clear that, under federal law, sexual harassment must be sexual." Id. at *8 (emphasis added). The Smith court only addressed state and city law in a footnote, relying solely on Singh, id. at *8 n.13, thus incorporating Singh's errors. Smith v. Boehringer Ingelheim Pharms., LLC, involved claims under Connecticut state law that, unlike the NYCHRL, require lewd conduct. 2025 WL 2403042, at *9 (D. Conn. Aug. 19, 2025) (citing Conn. Gen. Stat. § 46a-60(b)(8) which defines "sexual harassment" as "unwelcome sexual advances or requests for

Lane has sufficiently pled conduct constituting sexual harassment under the NYCHRL. Lane alleges that her manager criticized her and blamed her for things the manager knew were not Lane's fault, including criticizing Lane to other employees and clients (Compl. ¶ 39-40, 44); claimed Lane's success in beating a forecast was actually a fault (id. ¶ 45); berated Lane in front of her male peers (id.); excluded Lane from business communications relating to her responsibilities, which undermined Lane with her team (id. ¶ 46); and avoided Lane while spending time with the younger men (id. ¶¶ 47-48). In addition, the Senior Vice President for Nonprofit Sales treated men differently in meetings, joking around with them and letting mistakes slide, while being much more demanding of the women in the meetings. (Id. ¶ 50)

Lane's manager made false accusations about her performance and tried to pressure her to leave Salesforce. (Id. ¶¶ 51-52, 55) When Lane returned from a medical leave caused by the hostile work environment, her manager resumed the harassment. (Id. ¶¶ 70-72) Among other things, her manager assigned Lane data entry busy work that she did not assign to the men and allowed her only one day to complete administrative tasks that she provided the men several days to complete. (Id. ¶ 75) Lane's manager then reinstated the PIP, imposes impossible requirements that were not required of the men. (Id. ¶¶ 78-79)

Courts have found similar treatment of women in the workplace—such as differential workload and opportunities or unjustified scrutiny—to constitute sexual harassment. See Encarnacion v. Isabella Geriatric Ctr., Inc., 2014 WL 7008946, at *11 (S.D.N.Y. Dec. 12, 2014) (finding that conduct including "frequent and unjustified verbal reprimands," singling out plaintiff "by checking over every detail of her work," and "refusing to meet with" plaintiff constituted

---

sexual favors or any conduct of a sexual nature"). Moulds v. Skillcycle, Inc., No. 23-cv-4873, 2024 WL 2206464, at 1 n.1 (E.D. Pa. Mar. 27, 2024), had only cursory analysis that did not involve NYCHRL or NJLAD claims.

harassment); see also Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (finding that the plaintiff had plausibly alleged harassment under NYCHRL where she was paid less for similar work, "denied resources" that were provided to male colleagues, and not consulted regarding work assignments), vacated and remanded on other grounds by 2024 WL 2813563, at *1 (2d Cir. June 3, 2024).[10]

As the Complaint alleges conduct that meets the NYCHRL standard for a sexual harassment claim, plaintiff cannot be compelled to arbitrate her claims.

B. Federal Law Sexual Harassment Standard Is in Accord

The Owens court found support for its interpretation of the NYCHRL in the extensive case law under the more restrictive federal sexual harassment standard. 796 F. Supp. 3d at 847. Indeed, the Supreme Court has long held that sexual harassment "need not be motivated by sexual desire." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Similarly, the Second Circuit repeatedly has held that sexual harassment need involve conduct reflecting sexual desire or intent. See, e.g., Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547-48 (2d Cir. 2010) (explaining that

---

[10] See also Keles v. Psarelli, 2023 WL 5110157, at *12 (E.D.N.Y. Aug. 9, 2023) (holding that plaintiff alleged hostile work environment under the NYCHRL where he alleged that he was subjected to "unfavorable employment change[s]" including an office reassignment based on protected characteristic and rejecting defendant's argument that plaintiff's claim failed because, inter alia, he did not allege that individuals directed biased comments at him); Lebowitz v. New York City Dep't of Educ., 407 F. Supp. 3d 158, 183 (E.D.N.Y. 2017) (allowing NYCHRL hostile work environment claims to proceed where "plaintiffs repeatedly allege that they were treated differently from younger teachers because of their age, including being evaluated under less advantageous circumstances, having access to fewer resources at the school, being subjected to insult and ridicule, and receiving poorer evaluations"); Bacchus v. N.Y. City Dep't of Educ., 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015) (concluding that evidence of "a disproportionate workload" and biased discipline were sufficient); Vaigasi v. Solow Mgmt. Corp., 2014 WL 1259616, at *11 (S.D.N.Y. Mar. 24, 2014) (plaintiff was subjected to a hostile work environment for the purpose of the NYCHRL where he alleged that he was transferred to less desirable job locations on the basis of his protected characteristic).

"harassing conduct need not be motivated by sexual desire . . . so long as it was motivated by gender" and that lower court erred in disregarding comments that were not "sexual in nature" in assessing harassment claim (citation omitted)); Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) ("Although sexual harassment is usually thought of in terms of sexual demands . . . [a] hostile environment is not limited to sexual advances or even to sexual behavior targeted at the complainant." (citations omitted)); Gregory v. Daly, 243 F.3d 687, 695 (2d Cir. 2001) ("This court has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex").

Lane's claims are very similar to the allegations in King v. Aramark Svcs., Inc., 96 F.4th 546 (2d Cir. 2024), in which the Second Circuit recently found a valid hostile environment claim where none of the conduct alleged was sexual. King's manager "would single out King in front of other . . . employees and cite her performance [with a client] as a negative example of what not to do." Id. at 553. Her manager falsely "rated her as inconsistently meeting expectations." Id. "He excluded King from important . . . meetings and interfered with her management by meeting with her directors, clients, and subordinates without notifying her." Id. The manager "gave King unrealistic deadlines and expectations" and "spoke to her in a rude, condescending, dismissive and hostile manner—often in front of other colleagues and superiors." Id. The manager also "fabricated performance related complaints to try to get [King] fired." Id. at 554. King never saw her manager treat men, including the men who reported to him, in the way he treated her. Id. at 553-54.[11] The employer conducted a "less-than-thorough" investigation and concluded King's claims were

[11] King did not allege "any overt gender-based degrading statements or conduct." King v. Aramark Svcs., Inc., No. 1:19 Civ. 77, 2022 WL 1460238, at *20 (N.D.N.Y. May 9, 2022) (emphasis in original).

unfounded. Id. at 555. Ultimately, the employer fired King, an act the Second Circuit found was "part of an ongoing discriminatory pattern or practice of sex-based harassment." Id. at 562.

As Lane thus pleads a valid federal claim, she more than meets the standard of the NYCHRL.

C. Sexual Harassment Under New Jersey Law

Lane also states a claim for sexual harassment under the NJLAD. Defendant cites to only one case, Cornelius v. CVS Pharmacy, Inc., 23-01858, 2023 WL 6876925, at *3 (D.N.J. Oct. 18, 2023) (Def. Br. 19), which relied upon Pennsylvania, rather than New Jersey, cases and, in any event, was later affirmed in part on different grounds and vacated in part. See Cornelius v. CVS Pharmacy Inc., 133 F.4th 240, 251 (3d Cir. 2025). Defendant ignores a New Jersey case finding that harassment based on the plaintiff's transgender status constitutes actionable sexual harassment under federal and state law, both of which require only hostility due to the person's gender, and thus triggers the protection of the EFAA. See Michael v. Bravo Brio Rest. LLC, No 23-3691 (RK) (DEA), 2024 WL 2923591, at *6 (D.N.J. June 10, 2024).

More significantly, defendant disregards well-established law that a sexual harassment claim under the NJLAD need not involve any lewd or romantic conduct. (Def. Br. 19) In the leading NJLAD case on the subject, the New Jersey Supreme Court held that "harassing conduct need not be sexual in nature; rather, its defining characteristic is that the harassment occurs because of the victim's sex." Lehmann v. Toys R Us, Inc., 132 N.J. 587, 602 (1993).[12] The Court recognized that "not all sexual harassment is sex-based on its face." Id. at 605. A plaintiff may prevail by showing "that only women suffered the non-facially sex-based harassment. All that is required is

[12] See also Carrillo v. Empire Hotel Servs., LLC, No. 2:22-CV-03273 (WJM), 2023 WL 3993767, at * 3 (D.N.J. June 14, 2023); Paige v. Atrion Comm. Resources, Inc., 3:17-cv-00472-PGS-TJB, 2019 WL 5846799, at *4-5 (D.N.J. Nov. 7, 2019).

a showing that it is more likely than not that the harassment occurred because of the plaintiff's sex." Id. As set forth above, Lane's claim meets that standard.

Accordingly, under all the applicable laws, defendant's argument that plaintiff's claims do not constitute "sexual harassment" (Def. Br. 14-19) must fail and the entire case must remain in court.[13] Indeed, if plaintiff pleads conduct that constitutes sexual harassment under any of these laws, her case must remain in court.

D. Plaintiff's Retaliation Claims Independently Support Application of the EFAA

Salesforce is well-aware that Lane is asserting claims for retaliation for having complained of sex-based harassment, as she has asserted specific claims (Compl. ¶¶ 105-08, 117-28), recounted her protected activity (Id. ¶¶ 49, 53, 57, 59, 62, 74, 77), and described the retaliatory actions taken, including firing her. (Id. ¶¶ 51-52, 55, 63-72, 75, 78, 80) Despite this, defendant entirely ignores that plaintiff's retaliation claims are an independent basis for applying the EFAA.

As the Second Circuit held, "retaliation resulting from a report of sexual harassment is related to conduct that is alleged to constitute sexual harassment." Olivieri, 112 F.4th 74, 84 (internal citations and quotations omitted) (finding EFAA applicable to retaliation case); see Puris v. TikTok, Inc., et al., No. 24CV944 (DLC), 2025 WL 343905, at *5 (S.D.N.Y. Jan. 30, 2025) (holding that dispute "relate[d]" to sexual harassment for the purpose of the EFAA because employee "says that she was fired . . . at least in part for complaining about []sexual harassment [] and the defendants' response to it"); Diaz-Roa, 757 F. Supp. 3d at 536 (holding that a "plaintiff need not state a claim for sexual harassment to be considered to have made allegations relating to

[13] "Courts in this district almost uniformly hold that 'if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to' the plaintiff's 'entire case.'" Lambert v. New Start Cap. LLC, No. 1:24-CV-8055-GHW, 2025 WL 2295254, at *13 (S.D.N.Y. Aug. 7, 2025) (collecting cases) (citations omitted).

conduct that is alleged to constitute sexual harassment" (citation modified)); Newton v. LVMH Moet Hennessy Louis Vuitton Inc., 746 F. Supp. 3d 135, 151 (S.D.N.Y. 2024) (holding that a standalone complaint for retaliation fell within the EFAA's scope because it was based on "reporting and speaking out" about earlier sexual harassment), vacated in part on other grounds by 2025 WL 1826583 (S.D.N.Y July 2, 2025); Clay v. FGO Logs., Inc., 751 F. Supp. 3d 3, 17-18 (D. Conn. 2024) (concluding that retaliation claim was covered by EFAA even though underlying sexual harassment claims were outside EFAA's temporal scope).

Defendant does not address why Lanes's retaliation claims would not independently be sufficient under Olivieri to support application of the EFAA. Because Salesforce did not address this issue, its arguments are waived. See Cobb v. Am. Urban Radio Networks LLC, 24-CV-1305 (PAE), 2025 WL 641437, at *3 n.2 (S.D.N.Y. Feb. 27, 2025) ("[A]n argument omitted in a party's opening brief, and raised for the first time on reply, is waived.").

Even if defendant was permitted to argue that Lane's retaliation claims do not fall within the EFAA because the underlying conduct purportedly does not constitute sexual harassment—which it should not be—that argument still fails. As explained above, Lane's allegations are more than sufficient to establish sexual harassment. However, even if Lane had not made this showing (which she has), it is well established that "[f]or the purpose of pleading engagement in a protected activity, the conduct the employee complained about need not have actually been discriminatory so long as the employee had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." Summa v. Hofstra Univ., 708 F.3d 115, 126 (2d Cir. 2013); see Gorzynski, 596 F.3d at 111 (same); Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)( same). Indeed, "the Second Circuit has held that a '[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful.'" Diaz-Roa, 757 F. Supp.

3d at 536 (quoting Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)). Because Lane was retaliated against because she complained about sexual harassment, her retaliation claims provide an independent basis for the existence of a sexual harassment dispute under the EFAA.

## CONCLUSION

For the reasons set forth above, defendant's motion to compel arbitration should be denied.

Dated: February 6, 2026
New York, New York

VLADECK, RASKIN & CLARK, P.C.

By: *　/s/ Anne L. Clark*
Anne L. Clark
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300
Attorneys for the Plaintiffs

## CERTIFICATE OF COMPLIANCE

Anne L. Clark, attorney of record for plaintiffs, certifies that the foregoing brief complies with the requirements of Rule 7.1(c) of the Joint Local Rules of the Southern District of New York and Eastern District of New York. The total number of words in the foregoing brief, excluding sections that may be precluded under Local Rule 7.1(c), based upon the word count of the word-processing system used to prepare the brief, is 6,505.

Dated: February 6, 2026
New York, New York

VLADECK, RASKIN & CLARK, P.C.

By: *\/s/ Anne L. Clark*
Anne L. Clark
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300
Attorneys for the Plaintiffs



#1029369