**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------X

TRICIA LANE, Case No. 1:25-cv-09707

Plaintiff,

-against-

SALESFORCE, INC.

Defendant.

-----------------------------------------------X

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THE COMPLAINT

## ORAL ARGUMENT REQUESTED

---

**FISHER & PHILLIPS LLP**
Colleen P. Tandy, Esq.
Kathryn K. Mize, Esq.
400 Connell Drive, Suite 4000
Berkeley Heights, New Jersey 07922

Times Square Tower
7 Times Square, Suite 4300
New York, New York 10036

Phone: (908) 516-1050
Fax: (908) 516-1051
E-mail: ctandy@fisherphillips.com
kmize@fisherphillips.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL ARGUMENT ..................................................................................................... 2

**A. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim. ................................ 3**

1. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under the NYCHRL. ... 3

2. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under Federal Law. ...... 6

3. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under the NJLAD. ........ 6

**B. Plaintiff's Retaliation Claims Do Not Independently Support Application of the EFAA. ............................................................................................................ 7**

CONCLUSION ............................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 2

*Brazzano v. Thompson Hine LLP*,
No. 24-cv-01420, 2025 WL 963114 (S.D.N.Y. Mar. 31, 2020) ... 5

*Cornelius v. CVS Pharmacy, Inc.*,
No. 23-cv-1858, 2023 WL 6876925, at *4 (D.N.J. Oct. 18, 2023), *aff'd in part, vacated in part on different grounds, remanded*, 133 F.4th 240 (3d. Cir. 2025) ... 7

*Delo v. Paul Taylor Dance Foundation, Inc.*,
685 F. Supp. 3d 173 (S.D.N.Y. 2023) ... 4

*Diaz-Roa v. Hermes Law, P.C.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024) ... 2, 3, 4

*Ding v. Structure Therapeutics, Inc.*,
765 F. Supp. 3d 897 (N.D. Cal. 2025) ... 5

*Hamilton v. City of N.Y.*,
563 F. Supp. 3d 42, 59 (E.D.N.Y. 2021) ... 3

*King v. Aramark Services., Inc.*,
96 F.4th 546 (2d Cir. 2024) ... 6

*Michael v. Bravo Brio Restaurants LLC*,
No. CV 23-3691, 2024 WL 2923591 (D.N.J. June 10, 2024) ... 6, 7

*Mitura v. Finco Services, Inc.*,
712 F. Supp. 3d 442 (S.D.N.Y. 2024) ... 4, 5

*Montanus v. Columbia Mgmt. Inv. Advisers, LLC*,
No. 25 Civ. 2798, 2025 WL 2503326, at *8 (S.D.N.Y. Sept. 2, 2025) ... 9

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024) ... 9

*Owens v. PriceWaterHouseCoopers LLC*,
786 F. Supp. 3d 831 (S.D.N.Y. 2025) ... 3, 6, 8, 9

*Palmeri v. Hilltop Securities, Inc.*,
No. 22-05588, 2026 WL 375962 (D.N.J. Feb. 11, 2026) ........ 7

*Singh v. Meetup LLC*,
750 F. Supp. 3d 250, 259 (S.D.N.Y. 2024) ........ 8

*Smith v. Meta Platforms, Inc.*,
No. 24 Civ. 4633, 2025 WL 2782484, at *8-9 (S.D.N.Y. Sept. 30, 2025) ........ 9

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563, 585-86 (S.D.N.Y. 2023) ........ 2, 7, 8

**Federal Statutes**

9 U.S.C. § 402(4) ........ 2

9 U.S.C. § 402(a) ........ 8

9 U.S.C. § 402(b) ........ 2

Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA") ........ 1

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") ........ 1

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"),
9.U.S.C. §§ 401-402 ........ passim

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq. ("Title VII") 1

**State Statutes**

New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ("NJ EPA") ........ 2

New York Labor Law § 194 ("NY EPA") ........ 1

New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL") ........ 1

## PRELIMINARY STATEMENT

Defendant Salesforce, Inc. ("Defendant" or the "Company"), respectfully submits this Reply Memorandum in further support of its Motion to Compel Arbitration. *See Doc.* 9 ("Defendants' Motion").[1]

This dispute belongs in arbitration. Plaintiff expressly agreed to arbitrate "all claims or controversies, past, present or future, whether or not arising out of your employment (or its termination), that the Company may have against you or that you (and no other person) may have against . . . the Company." (McAteer Decl., Exhibit A, at 6, Section 1). This broad agreement (the "Arbitration Agreement") encompasses all of Plaintiff's claims, including those under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq. ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code, § 8–101 et seq. ("NYCHRL"); and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD"). Plaintiff also brings claims under the New York Labor Law § 194 ("NY EPA"), and the New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ("NJ EPA").

Plaintiff concedes the Arbitration Agreement is valid, and her Complaint lacks allegations of or relating to sexual harassment sufficient to trigger the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9.U.S.C. §§ 401-402. Accordingly, Defendants' Motion to Compel Arbitration should be granted.

[1] The Declaration of David McAteer submitted in support of Defendants' Motion (*Docs.* 9-1 through 9-3) is referred to herein as the "McAteer Decl."

## LEGAL ARGUMENT

Plaintiff concedes that she entered into a valid and enforceable Arbitration Agreement with Defendant. (Pl.'s Mem., *Doc.* 11, at 5). Thus, it should be enforced by this Court.

Plaintiff's argument that it should not be enforced turns on her contention that the EFAA exempts this matter from arbitration. To qualify for the EFAA arbitration exemption, a complaint's claims must relate to a "sexual assault dispute or [a] sexual harassment dispute" within the meaning of the EFAA. 9 U.S.C. § 402(b). A "sexual harassment dispute" under the EFAA is "a dispute relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 402(4). The Complaint here fails to allege any conduct sufficiently relating to a sexual harassment dispute to warrant application of the EFAA's arbitration exemption.

By invoking the EFAA, Plaintiff concedes that federal law applies. *See* 9 U.S.C. § 402(b) ("An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law"). Federal courts have widely held that the EFAA applies only where the plaintiff's sexual harassment allegations are capable of surviving a pleading-stage challenge under the Rule 12(b)(6) standard. *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585-86 (S.D.N.Y. 2023). *Yost* itself held that "the term 'alleged' as used in 9 U.S.C. § 401(4) is best read to implicitly incorporate the plausibility standard" of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Yost*, 657 F. Supp. 3d at 585. Without this threshold requirement, a plaintiff could "evade a binding arbitration agreement" by "the expedient of adding facially unsustainable and quickly dismissed claims of sexual harassment," thereby "destabiliz[ing] the FAA's statutory scheme." *Id.* at 586.

But even if this Court were to follow *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024), in holding the *Iqbal/Twombly* plausibility standard inapplicable to assessing the applicability of the EFAA's arbitration exemption, Plaintiff's Complaint would still have to allege

"specific facts" that satisfy the relevant "standards for sexual harassment." *Id.* at 546. It fails to do so.

### A. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim.

#### 1. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under the NYCHRL.

The NYCHRL case law Plaintiff relies on demonstrates that while her Complaint arguably alleges disparate treatment under the NYCHRL, *see, e.g., Hamilton v. City of N.Y.*, 563 F. Supp. 3d 42, 59 (E.D.N.Y. 2021) (defining disparate treatment under the NYCHRL as "differential treatment—that [plaintiff] is treated less well—because of a discriminatory intent"), it does not allege EFAA-qualifying sexual harassment.

*Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831 (S.D.N.Y. 2025), the case Plaintiff most frequently cites, makes that crystal clear. "Under the NYCHRL," *Owens* holds, "conduct constituting sexual harassment is **unwelcome verbal or physical behavior based on a person's gender**," such as "being shouted at or shoved and that the harassment was motivated by [the plaintiff's] gender." *Id.* at 846 (emphasis added). This "is **a higher bar than simply alleging that a plaintiff was 'treated less well than other employees because of [] gender**.'" *Id.* at 847 (emphasis added). The *Owens* plaintiff alleged her harasser "denigrated her in front of subordinates and verbally threatened and berated her, sometimes yelling at her in front of directors." *Id.* at 848. Nothing like that is alleged here. Rather, Plaintiff only alleges her supervisor "criticized" her and "did not support [her] when she had to address challenges in her new accounts." (*Doc.* 1, ¶¶ 39-45.)[2]

[2] Plaintiff does not allege anywhere in the Complaint that Temple "berated" her in front of her male peers. (Pl.'s Mem. at 2, 14; *Doc.* 1 ¶¶ 39-45).

In *Diaz-Roa*, 757 F. Supp. 3d at 546, the plaintiff satisfied the NYCHRL sexual harassment standard by alleging her supervisor encouraged her to "flirt with potential clients, to use her appearance to attract business, and to become romantically involved with individuals in the industry"; "fixated" on plaintiff's appearance "by directing her to fix her makeup and accusing her of looking tired but did not fixate on male employees' appearances"; placed plaintiff into a "physically 'compromising' position by sliding behind her on a scooter"; and "compared [p]laintiff to a piece of steak at a business dinner." *Id.* at 546. Nothing like that is alleged here.

In *Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp. 3d 173 (S.D.N.Y. 2023), plaintiff plausibly alleged she was subject to "unwanted gender-based conduct" where, during her job interview, when she was "visibly pregnant," the defendant dance company's executive director asked a fellow interviewer, the production manager, "What will she [plaintiff] do with the baby?" and then hired a man for the position (who soon failed and was replaced by plaintiff). *Id.* at 183. After plaintiff began working for the dance company, the executive director "chastise[d]" her in front of her team for bringing her newborn child on a performance trip, told the production manager plaintiff was a "liability" and that it was "completely unacceptable for a child to appear in any [Company] workspace, ever," even though he did not criticize male employees for bringing children to the workplace. *Id.* In one instance, the executive director "reached across [plaintiff's] body and 'hover[ed] closely over' her to use her desk phone while she was pumping breast milk." *Id.* Nothing like that is alleged here.

In *Mitura v. Finco Services, Inc.*, 712 F. Supp. 3d 442 (S.D.N.Y. 2024), the complaint alleged that plaintiff, an Asian woman, "was subjected to weekly, degrading comments and insults," such as being called a "single woman," an "old woman," and an "old Asian woman with no kids." *Id.* at 453. When plaintiff told her employer's head of people of her breast cancer

diagnosis, he asked whether plaintiff had cancer because her "breasts were so large." *Id.* On another occasion, when the plaintiff proposed a menstruation leave policy, the same individual asked her, "[D]o you even still menstruate Isabelle?" *Id.* At a companywide meeting, the CEO commented, "all Isabelle does is laugh and nod her head and agree," which the court called "a not-at-all subtle reference to stereotypes of servile Asian women." *Id.* Nothing like that is alleged here.

In *Brazzano v. Thompson Hine LLP*, No. 24-cv-01420, 2025 WL 963114 (S.D.N.Y. Mar. 31, 2020), the plaintiff attorney's "key allegation" was that her male supervisor told her, while she was alone with him in his office, that "judges know lawyers who provide legal services are working on a *pro bono* basis, and it's like getting jerked off by a judge." *Id.* at *7. Because the supervisor's remark "is lewd, refers to a sexual act, and was made when [plaintiff] was alone with [the supervisor] in his office," the court could "reasonably construe such conduct as 'unwanted gender-based conduct.'" *Id.* Fair enough, but nothing like that is alleged here.

Finally, in *Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897 (N.D. Cal. 2025), the court held plaintiff female former CFO "plausibly states an NYCHRL claim for hostile work environment sexual harassment," where the complaint alleged, among other things, that the male CEO conveyed to her comments that she was "too aggressive" and that investment bankers felt "lectured by her," while if plaintiff had been a man, "these 'Wolves of Wall Street' never would have opined that she was being 'too aggressive or that she had been 'lecturing them.'" *Id.* at 900. When the plaintiff at a later time informed the defendants of physical injuries she had suffered in a domestic violence incident, the CEO remarked, "I can hardly see anything. You may be more sensitive to it than others." *Id.* at 900-01. Nothing like that is alleged here.[3]

[3] The other NYCHRL decisions Plaintiff cites are not EFAA decisions. (Pl.'s Mem. at 14-15 & n.10.)

Instead, at worst, all Plaintiff alleges here is that she was the victim of disparate treatment on the basis of her gender, in other words that she was treated "less well" because of her gender. That is simply insufficient for Plaintiff to invoke the EFAA, which requires "unwelcome verbal or physical behavior based on a person's gender," a "higher bar than simply alleging that a plaintiff was 'treated less well than other employees because of [] gender.'" *Owens*, 786 F. Supp. 3d at 846, 847.

**2. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under Federal Law.**

The federal cases Plaintiff cites are inapposite, since they do not address the EFAA. It is, however, worth mentioning *King v. Aramark Services., Inc.*, 96 F.4th 546 (2d Cir. 2024), since Plaintiff says her "claims are very similar to the allegations" in *King*. (Pl.'s Mem. at 16.) The *King* plaintiff's supervisor persistently disparaged her physical appearance. "[T]wo to three times per week[,]" the plaintiff's supervisor stared at her "midsection, where she is heavier, with 'disgust.'" *King*, 96 F.4th at 554. On multiple occasions, he commented on her food intake, implying she was overeating. *Id.* "[O]n several occasions," he also told her to "go to the gym at 5:30 in the morning, as the CEO [] would be there, and the CEO would like to see [the plaintiff] 'actively working out at the gym.'" *Id.* Nothing like that is alleged here. Plaintiff's contention here that her case and *King* are similar is simply wrong.

**3. Plaintiff Has Not Sufficiently Pled a Sexual Harassment Claim Under the NJLAD.**

The only NJLAD case Plaintiff cites that addresses the EFAA is *Michael v. Bravo Brio Restaurants LLC*, No. CV 23-3691, 2024 WL 2923591 (D.N.J. June 10, 2024). There, the plaintiff's supervisor allegedly called "her a homophobic slur in Spanish on multiple occasions, discuss[ed] her gender identity to other employees, and comment[ed] on how Plaintiff 'takes it' from a purported romantic partner[.]" *Id.* at *5. Plaintiff also alleged her supervisor told her she

needed to "man up and use what God gave [her] between [her] legs." *Id.* at *5. Here, unlike *Michael*, Plaintiff fails to allege any conduct that could reasonably be deemed as "constituting a sexual harassment dispute" under the NJLAD sufficient to trigger the EFAA. *Id.* at *4, *citing* 9 U.S.C. § 402(a); *Cornelius v. CVS Pharmacy, Inc.*, No. 23-cv-1858, 2023 WL 6876925, at *4 (D.N.J. Oct. 18, 2023), *aff'd in part, vacated in part on different grounds, remanded*, 133 F.4th 240 (3d. Cir. 2025).

Just this week, *Palmeri v. Hilltop Securities, Inc.*, No. 22-05588, 2026 WL 375962 (D.N.J. Feb. 11, 2026), found the EFAA inapplicable to NJLAD claims based on allegations that the plaintiff's supervisor altered her compensation, "treated her poorly, excluded her from meetings or corporate decision to hire, disparaged her performance for not being a 'good manager' or 'growing the business,' and favored her male colleagues"; informed her that "she would be replaced, that she should train her replacement through 2022, and then separate from her employment" from the company. *Id.* at *6. If the allegations in *Palmeri* were insufficient to trigger application of the EFAA, that is so much more the case here, where the conduct Plaintiff alleges was neither severe nor pervasive.

Plaintiff, in sum, fails to show the EFAA is applicable to her NYCHRL, federal, or NJLAD claims. The Court should therefore grant Defendant's motion and compel Plaintiff to arbitrate if she wishes to pursue her claims.

### B. Plaintiff's Retaliation Claims Do Not Independently Support Application of the EFAA.

Plaintiff's retaliation claims similarly fail to trigger the EFAA, given that the conduct she allegedly complained of internally at the Company does not qualify as sexual harassment under the EFAA, even assuming it might qualify as disparate treatment. As *Yost* explained:

> [T] he EFAA might be implicated by lawsuits other than the ones containing sexual harassment causes of action—for example, a lawsuit that brought a claim against an employer for retaliating against a plaintiff who had made a protected report of sexual harassment. This case, however, does not contain claims of this nature, and the Court thus does not have occasion to consider how the EFAA would apply in such a context. Although [the plaintiff's] memorandum of law pretends otherwise, **the [Complaint] does not anywhere allege retaliation for the reporting of sexual harassment. Rather, it claims retaliation against [the plaintiff] for her claim that certain [] employment policies were gender-discriminatory**. *See, e.g.*, SAC ¶¶ 22 ("Defendants retaliated against [Yost] when they terminated her the day after she informed her superiors ... that she could not comply with their plainly illegal, retaliatory, and discriminatory personnel policies that made women ... second-class employees at Everyrealm."), 212 (retaliation for "opposing unlawful employment practices"), 224 (same), 241 (same), 256 (retaliation for "rais[ing] concerns about discrimination towards women).

*Yost*, 657 F. Supp. 3d at 583 n.14 (citations omitted; emphasis added).

Similarly, here, Plaintiff's Complaint alleges she complained to HR that "Temple was discriminating against her and creating a hostile work environment" by putting her on a performance improvement plan. (*Doc.* 1, ¶¶ 51-54). But that is not a sexual harassment complaint, as it is not a complaint of "unwelcome verbal or physical behavior based on a person's gender," under the most lenient sexual harassment standard, the NYCHRL's. *Owens*, 786 F. Supp. 3d at 846. It accordingly fails to meet the EFAA standard. *See also Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 259 (S.D.N.Y. 2024) (holding the alleged harassing conduct would not "rise to what the courts have determined constitutes 'sexual harassment' under the NYCHRL" and therefore the plaintiff's "claims under the NYCHRL of discrimination, *retaliation*, and aiding and abetting caused by sexual harassment [] fail to trigger the EFAA") (emphasis added); *Montanus v. Columbia Mgmt. Inv. Advisers, LLC*, No. 25 Civ. 2798, 2025 WL 2503326, at *8 (S.D.N.Y. Sept.

2, 2025) (finding the EFAA inapplicable to claims of retaliation for complaints of gender discrimination because "the labels the Complaint attaches to its causes of action arising from the post-EFAA conduct—gender discrimination and retaliation for opposition to such discrimination—underscore that their gravamen is unequal treatment based on gender" rather than sexual harassment) (record citation omitted).

Plaintiff quotes *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74 (2d Cir. 2024), for its proposition that "retaliation resulting from a report of sexual harassment is related to conduct that is alleged to constitute sexual harassment" and so is covered by the EFAA, *id.* at 84. But again, the report must be of "sexual harassment," which, again, under the most lenient possible standard is "unwelcome verbal or physical behavior based on a person's gender," *Owens*, 786 F. Supp. 3d at 846, not disparate treatment. *See also Smith v. Meta Platforms, Inc.*, No. 24 Civ. 4633, 2025 WL 2782484, at *8-9 (S.D.N.Y. Sept. 30, 2025) (holding that plaintiff's report "that women were being *discriminated against* because of their sex" does not sufficiently "relat[e] to" sexual harassment, per *Olivieri*, for application of the EFAA arbitration exemption) (court's emphasis).

The Complaint fails to allege either that Plaintiff was a victim of sexual harassment or that she reported sexual harassment. The EFAA accordingly does not apply here, and the Court should grant Defendant's motion to compel arbitration.

## CONCLUSION

It is undisputed that Plaintiff entered into a valid and enforceable Arbitration Agreement with Defendant, the scope of which encompasses the claims Plaintiff asserts in her Complaint. It is also clear that the Complaint does not allege either sexual harassment or anything that "relates to" sexual harassment. Therefore, for the reasons set forth above and in Defendant's Motion, the Court should compel Plaintiff to arbitrate her claims if she wishes to pursue them and stay this action pending arbitration.

Respectfully submitted,

**FISHER & PHILLIPS LLP**
*Attorneys for Defendant*

By: ______________________________

Colleen Tandy, Esq.
Kathryn K. Mize, Esq.
E-mail: ctandy@fisherphillips.com
kmize@fisherphillips.com

Dated: February 13, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that the foregoing Memorandum of Law contains 2,875 words, excluding the caption, table of contents, table of authorities, signature block, and this Certificate of Compliance.

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration and Stay the Complaint filed on January 23, 2026 (*Doc.* 9) contains 5,746 words, excluding the caption, table of contents, table of authorities, and signature block.

*s/Kathryn K. Mize*
KATHRYN K. MIZE

Dated: February 13, 2026