USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___________
DATE FILED: 8/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRICIA LANE,

Plaintiff,

-v-

SALESFORCE, INC.,

Defendant.

**MEMORANDUM AND ORDER**

25-CV-9707 (DEH) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Tricia Lane ("Plaintiff" or "Lane") brings this action against Defendant Salesforce, Inc. ("Defendant" or "Salesforce") alleging various forms of discrimination and retaliation based on her gender, age, and disability status. She asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code, § 8–101 *et seq.* ("NYCHRL"); the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("NJLAD"); the New York Labor Law § 194 ("NY EPA"); and the New Jersey Equal Pay Act, N.J. Stat. Ann. § 10:5-12(a) ("NJ EPA"). Defendant now moves to compel arbitration of Plaintiff's claims and to stay this case pending arbitration. For the reasons described below, Defendant's motion to compel arbitration and to stay the case is **GRANTED**.

# I. BACKGROUND

## A. Factual Background

Lane joined Salesforce as an Account Executive in July 2017. Complaint, ECF No. 1 (the "Complaint" or "Compl.") ¶ 19. She alleges that for the first six and a half years, she excelled in her role and was recognized for her excellent performance and leadership. *Id.* ¶¶ 21–30. During this time, Plaintiff claims to have transformed the team she managed from the "lowest performing" to the "highest performing Enterprise team" and was promoted to Regional Vice President ("RVP") in August 2019. *Id.* ¶¶ 23–25.

Lane was assigned to a new territory in February 2024, inheriting four new direct reports, two of whom had alleged performance issues, and a new supervisor, Rebecca Temple ("Temple"). *Id.* ¶¶ 32–35. Plaintiff contends that Temple treated her differently from the three male RVPs also reporting to Temple. *Id.* ¶¶ 37–38. Temple allegedly blamed Lane for issues that pre-dated her responsibility for them, falsely criticized her to other employees and clients, and made false accusations against her. *Id.* ¶¶ 39–40. Plaintiff alleges that Temple harshly criticized her forecast reports (but refrained from criticizing her male peers' reports), accused her of intentionally submitting artificially low forecasts, excluded her from communications and decisions, and often missed their one-on-one meetings while making herself available to meet with Lane's male peers. *Id.* ¶¶ 44–47. Plaintiff spoke with Temple about this treatment in April and May of 2024, but Temple refused to acknowledge her concerns. *Id.* ¶ 49.

On May 20, 2024, Plaintiff complained to HR about Temple's treatment of her. *Id.* ¶ 53. Later that same day, Temple notified Plaintiff that she was being placed on a Performance Improvement Plan ("PIP"). *Id.* ¶ 51. Plaintiff alleges that Temple provided her with a written description of her performance issues that was "full of lies." *Id.* ¶¶ 51–52. Plaintiff made a detailed complaint to HR on May 22, 2024, claiming that Temple's accusations were false and that "Temple was discriminating against her and creating a hostile work environment." *Id.* ¶ 53.

On June 14, 2026, Plaintiff was placed on medical leave by her doctor. *Id.* ¶¶ 58–59. Plaintiff advised an employee relations representative on June 16, 2024 that she was on medical leave due to Temple's conduct. *Id.* ¶ 59. During her leave, Plaintiff alleges that she learned that Salesforce was hiring less experienced employees and paying them more than she was being paid. *Id.* ¶ 60. On November 12, 2024, Plaintiff's attorney sent Salesforce a letter asserting violations of civil rights laws. *Id.* ¶ 62. Plaintiff alleges that she planned to return from leave on December 16, 2024, but Salesforce created obstacles to her return and requests for accommodations. *Id.* ¶¶ 63–68. These delays cost Plaintiff over a month of pay and benefits until she finally returned from leave on January 21, 2025. *Id.* ¶¶ 68–69.

Upon her return, Plaintiff claims that Temple continued to set her up for failure by denying her information she needed to perform her job, being generally unsupportive, and treating Plaintiff worse than her male peers. *Id.* ¶¶ 72, 75. Plaintiff alleges that on February 20, 2025, the HR representative responsible for investigating her internal complaint told her that he had done "due diligence" but

had not found any conduct violating Salesforce policy. *Id.* ¶ 74. Despite her requests for greater details about the investigation, the representative refused to elaborate. *Id.*

On February 25, 2025, Plaintiff filed a charge with the EEOC under Title VII, the ADEA and the ADA. *Id.* ¶ 77. Plaintiff alleges Temple reinstated the PIP with impossible and arbitrary meeting requirements on or about March 28, 2025. *Id.* ¶ 78. Ultimately, Plaintiff was fired on April 30, 2025. *Id.* ¶ 80.

### 1. The Arbitration Agreement

Before becoming an RVP, Plaintiff was promoted to Strategic Account Executive in June 2019. Defendant's Memorandum of Law in Support of Motion to Compel Arbitration, ECF No. 9 (the "Motion" or "D. Mem.") at 9.[1] At that time, Plaintiff signed an Arbitration Agreement (the "Arbitration Agreement") providing:

> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

*Id.* at 9–10. Plaintiff initialed under Paragraph 7, which notified her that her execution of the Arbitration Agreement was voluntary and that she had the option to opt out of arbitration, and signed directly below an acknowledgement that she was forfeiting her right to a trial. *Id.* at 10–11. Defendant never received an "opt-out" form from Plaintiff as described by Paragraph 7. *Id.* at 11.

[1] Pages cited in court filings refer to the ECF-generated pagination.

### B. Procedural Background

Plaintiff commenced this action on November 21, 2025. ECF No. 1. Defendant moved to compel arbitration and to stay the case on January 23, 2026. ECF No. 9. Plaintiff opposed the Motion on February 6, 2026, ECF No. 11 (the "Opp."), and Defendant filed its reply on February 13, 2026, ECF No. 12 (the "Reply"). On February 19, 2026, Plaintiff filed a supplemental letter, ECF No. 13, addressing new authority, to which Defendant responded on February 23, 2026, ECF No. 14. Plaintiff filed another supplemental letter regarding new authority on April 2, 2026, ECF No. 15, to which Defendant responded on April 3, 2026, ECF No. 16.

## II. LEGAL STANDARDS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate disputes is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts in this District consider four factors when evaluating whether parties are bound to arbitrate:

> (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether the plaintiff's . . . claims are nonarbitrable; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.

*Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–22 (2d Cir. 2019) (internal quotation marks omitted) (citing *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

"In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted), "and courts may therefore consider materials outside the complaint, including the arbitration agreement itself." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016).

**B. The EFAA**

Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA") to render unenforceable certain agreements to arbitrate sexual harassment disputes. More specifically, the EFAA amends the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute.

9 U.S.C. § 402(a). The statue defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. § 401(4). If the EFAA applies, an agreement to arbitrate is "invalid and unenforceable with respect to the entire case." *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024), *appeal docketed*, No. 24-3223 (2d Cir. Dec. 12, 2024).

Whether the EFAA applies depends on whether the case is a dispute relating to conduct that is alleged to constitute sexual harassment under applicable law. In

answering this question, Courts in this District "have almost uniformly employed [the] plausibility standard in determining whether a plaintiff has alleged conduct constituting sexual harassment." *Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 842 (S.D.N.Y. 2025) (internal quotation marks and citations omitted) (collecting cases), *appeal docketed*, No. 25-1717 (2d Cir. July 14, 2025).[2] In order to meet this standard, "the plaintiff must *plausibly* plead a claim of sexual harassment, rather than merely assert a non-frivolous claim." *Delo v. Paul Taylor Dance Found.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023) (emphasis in original) (*citing Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 582–88 (S.D.N.Y. 2023)).

The decision in *Yost* provides a four-part rationale for applying this plausibility standard. 657 F. Supp. 3d at 585–89. First, the Rule 12(b)(6) plausibility standard is "of long standing[,]" so it is "reasonable to infer that Congress . . . was aware that only viably pled . . . allegations of sexual harassment law had the capacity to proceed past the pleading stage[.]" *Id.* at 585. Second, the plausibility standard "fully vindicates the purposes of the EFAA" to "empower sexual harassment claimants to pursue their claims in a judicial . . . forum" by requiring sexual harassment claims to "be capable of surviving dismissal at the threshold of a litigation[.]" *Id.* at 586. Third, the plausibility standard would prevent plaintiffs from "evad[ing] a binding arbitration agreement . . . by . . . adding facially unsustainable and quickly dismissed claims of sexual harassment." *Id.*

[2] *But see Diaz-Roa*, 757 F. Supp. 3d at 535 ("the EFAA speaks to 'allegations,' *i.e.* the content of a pleading, and not to the conclusion that those allegations plausibly state a claim for relief if the pleading is challenged under Rule 12(b)(6).").

Fourth, courts in other non-EFAA contexts have "construed the statutory term 'allege' in accord with" the plausibility pleading standard. *Id.* at 587.

The undersigned finds *Yost* persuasive and follows the majority approach in this District for determining whether a plaintiff has alleged conduct constituting sexual harassment, which is to apply the plausibility standard. This approach "balances a healthy respect for the EFAA's purpose in empower[ing] sexual harassment claimants to pursue their claims in a judicial, rather than arbitral, forum while also heeding the FAA's purpose as a liberal federal policy favoring arbitration." *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 253 (S.D.N.Y. 2024) (alteration in original) (internal quotation marks and citations omitted). Accordingly, it is necessary to determine whether Plaintiff's allegations plausibly allege sexual harassment to fall within the EFAA's scope.

## III. DISCUSSION

Defendant moves to compel arbitration under the Arbitration Agreement, asserting that Plaintiff has not adequately alleged sexual harassment. *See* D. Mem. at 18–24. Plaintiff resists Defendant's Motion by arguing that the EFAA bars arbitration of her sexual harassment and retaliation claims. *See* Opp. at 15. "[I]f the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire case." *Diaz-Roa*, 757 F. Supp. 3d at 532. Plaintiff "does not dispute that, but for the EFAA, she would have to resolve her claims against Salesforce in arbitration." Opp. at 12. Thus, it is necessary to

determine whether Plaintiff plausibly alleges sexual harassment or retaliation related thereto, thus triggering the EFAA and barring arbitration of her claims.

### A. Whether the Complaint Pleads Sexual Harassment

The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The Complaint alleges discrimination and/or sexual harassment under Title VII, the NYSHRL, the NJLAD, and the NYCHRL. Compl. ¶¶ 81–84, 93–104. Among these statutes, the parties agree that the NYCHRL provides the "most lenient" and "expansive" liability standard for sexual harassment claims. D. Mem. at 19; Opp. at 15. Thus, although Lane brings claims under multiple statutes, "the Court's focus here is on the NYCHRL claim . . . because the NYCHRL's standards of liability are lower than those of Title VII, and lower than, or equal to, those of the NYSHRL." *Yost*, 657 F. Supp. 3d at 578.

Therefore, for Plaintiff's case to "fall within the scope of the EFAA, her NYCHRL discrimination claims must include allegations of conduct that constitutes sexual harassment as defined by the NYCHRL." *Owens*, 786 F. Supp. 3d at 845. If Plaintiff fails to allege conduct that constitutes sexual harassment under this most lenient standard, her claims under Title VII, the NYSHRL and the NJLAD are also unlikely to trigger the EFAA.

#### 1. What Constitutes Sexual Harassment Under the NYCHRL?

There is inconsistent authority in this District regarding what type of NYCHRL claims trigger application of the EFAA. Defendant's opening brief argues

that, in order to trigger the EFAA, the conduct at issue "must be sexualized in nature" and must involve, for example, "unwanted sexual advances, requests for sexual favors or other interactions of a sexual nature." D. Mem. at 21. In support of this position, Salesforce relies primarily on *Singh v. Meetup LLC*, 750 F. Supp. 3d 250 (S.D.N.Y. 2024). In rejecting plaintiff's argument that her NYCHRL claim triggered the EFAA, *Singh* observed that successful sexual harassment plaintiffs "have alleged conduct or language of the same kind of romantic, sexual, or lewd nature" that the New York City Commission on Human Rights has described in its guidance materials. *Id.* at 257. Other decisions in this District support Defendant's position. *See Smith v. Meta Platforms, Inc.*, No. 24-CV-4633, 2025 WL 2782484, at *8 (S.D.N.Y. Sept. 30, 2025) ("regardless of the source of law, sexual harassment must be sexual in nature"); *Montanus v. Columbia Mgmt. Invest. Advisers LLC*, 25-CV-2798, 2025 WL 2503326, at *7 (S.D.N.Y. Sept. 2, 2025) (finding that remarks made after the effective date of the EFAA "lack the sexualized content required to constitute sexual harassment under the EFAA."). If these cases articulate the correct standard, the Complaint fails to meet it. Lane does not even argue otherwise.

In opposition, Plaintiff asserts that "sexual harassment claims under the NYCHRL need not be based on lewd or romantic conduct." Opp. at 17 (citing *Owens*, 786 F. Supp. 3d at 845–48). Lane suggests, in passing, that merely treating a female employee "less well" than male employees can constitute sexual harassment under the NYCHRL, but quickly pivots away from this position,

clarifying that she does not ask the Court "to determine whether the standards for gender discrimination and sexual harassment under the NYCHRL for purposes of the EFAA are, in fact, coextensive." *Id.* With the possible exception of an out-of-circuit decision,[3] the cases Lane cites do not support the proposition that *any type* of gender-based differential treatment constitutes sexual harassment under the NYCHRL. The primary case Lane cites, *Mihalik*, predated the EFAA by nine years and plainly did not decide what allegations are sufficient to invalidate an agreement to arbitrate. *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). That decision addressed the legal sufficiency of the plaintiff's *gender discrimination* claims under the NYCHRL. The Second Circuit concluded that the district court erred by applying federal standards for liability under Title VII to a NYCHRL claim, including whether there was "quid pro quo" harassment and whether defendant's conduct was "severe and pervasive." *Mihalik*, 715 F.3d at 114. As the Second Circuit explained, "[t]o establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Id.* at 110 (*quoting Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). Thus, while the Second Circuit

[3] A California federal court concluded that, "[t]he NYCHRL, as interpreted by New York courts, says sexual harassment is conduct involving treating the plaintiff less well than other employees based on her gender." *Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897, 902 (N.D. Cal. 2025). The *Owens* decision, discussed below, expressly disagrees with the suggestion that all gender discrimination is also sexual harassment under the NYCHRL. Although this is not Lane's argument, the undersigned disagrees with it as well.

articulated a lenient standard for gender discrimination under the NYCHRL, it did not address whether the NYCHRL considers all forms of gender discrimination to constitute sexual harassment.

Plaintiff also cites *Delo v. Paul Taylor Dance Found*, *Inc.*, 685 F. Supp. 3d 173 (S.D.N.Y. 2023). Opp. at 19. Unlike *Mihalik*, *Delo* did address the EFAA, but it did not expressly hold that all forms of gender discrimination under the NYCHRL constitute sexual harassment. In order to determine whether the EFAA applied, *Delo* analyzed whether the plaintiff plausibly alleged that she was subject to "unwanted gender-based conduct." *Delo,* 685 F. Supp. 3d at 182–83. After finding that plaintiff made such allegations, the court concluded that because plaintiff "plausibly pled sexual harassment violations of the NYCHRL, the EFAA applies to block arbitration of all her claims." *Id.* at 185.

Instead of contending that all gender discrimination is sexual harassment under the NYCHRL, Lane argues for application of the standard articulated in *Owens*, a decision she praises for its "thorough, well-reasoned analysis." Opp. at 17. After arguing that *Owens* is well-supported, Lane contends that the conduct pleaded in the Complaint is "prohibited under the test set out by the *Owens* court." Opp. at 18. Thus, it is important to understand *Owens* and subsequent decisions following it to determine whether Lane's Complaint meets the standard that it articulates.

*Owens* reasoned through what it described as the "interesting issue" of "how the EFAA interacts with the NYCHRL." 786 F. Supp. 3d at 843. Its starting point

was to recognize that the NYCHRL neither creates a claim for sexual harassment nor defines what conduct constitutes sexual harassment. *Id.* Instead, it prohibits discrimination based upon gender, but "recognizes that sexual harassment is one species of sex- or gender-based discrimination." *Id.* (internal quotation marks and citation omitted). As a result, "the NYCHRL does not give courts guidance on what distinguishes conduct constituting 'sexual harassment' within the broader category of conduct that constitutes 'gender discrimination.'" *Id.* (citing *Singh*, 750 F. Supp. 3d at 255–56).

The EFAA, however, requires a determination of what constitutes sexual harassment under the NYCHRL. Based upon the text of the statute and cases construing it, the *Owens* court found that "the most straightforward reading of the NYCHRL is that sexual harassment is a subcategory of conduct within the broader category of gender-based discrimination." *Id.* at 844 (citing N.Y.C. Admin. Code § 8-107(29)(b)(1)). And while the standard for asserting liability under the NYCHRL is the same regardless of whether the conduct is discrimination or the subset of discrimination described as sexual harassment, "that does not mean those types of conduct are the same." *Id.* (citing *Williams*, 872 N.Y.S.2d at 39). Thus, *Owens* expressly rejected the notion that all claims of gender-based discrimination under the NYCHRL are claims of sexual harassment for purposes of the EFAA. *Id.*

Judge Woods then proceeded to analyze "how to define the subset of discriminatory conduct that is also 'sexual harassment.'" *Id.* at 845. The court looked to authoritative sources, including guidance published by the New York City

Commission on Human Rights, which is considered persuasive authority under New York state law. *Id.* The Commission's website, for example, describes sexual harassment as "unwelcome verbal or physical behavior based on a person's gender." *Id.* (citation omitted). Other guidance posted on the Commission's website, including sample posters, provide examples of conduct constituting sexual harassment, including "unwanted touching," "offending gestures or remarks" that are "sexualized" or "suggestive," and "making sexist remarks or derogatory comments based on gender." *Id.* at 846 (citation omitted). Based upon this analysis, the *Owens* court concluded:

> the standard this Court employs to determine whether conduct constitutes sexual harassment under the NYCHRL for purposes of the EFAA—unwelcome verbal or physical behavior based on a person's gender that need not be sexual or lewd in nature—is a higher bar than simply alleging that a plaintiff was 'treated less well than other employees because of [ ] gender.'"

*Id.* at 847 (alteration in original) (quoting *Delo*, 685 F. Supp. 3d at 182).[4]

After briefing concluded, Lane cited as supplemental authority another decision in this District agreeing with *Owens*. *See Toomey v. One Equity Partners*, No. 24-CV-4088, 2026 WL 458244 at *6 (S.D.N.Y. Feb. 18, 2026) ("the Court holds that 'sexual harassment' under the NYCHRL refers to unwanted verbal or physical

---

[4] While the *Owens* decision appeared to regard *Delo* as describing an overly broad standard, it is not clear that there is a significant difference between the standards articulated in *Delo* (whether plaintiff alleged "unwanted gender-based conduct") and *Owens* (whether plaintiff alleged "unwelcome verbal or physical behavior based on a person's gender"). *Compare Delo*, 685 F. Supp. 3d at 182–83, *with Owens*, 786 F. Supp. 3d at 845. The conduct alleged in *Delo*, which included that a superior "reached across [plaintiff's] body and 'hover[ed] closely over' her to use her desk phone while she was pumping breast milk" arguably satisfied the standard articulated in *Owens*. *Delo*, 685 F. Supp. 3d at 183 (alteration in original).

behavior based on gender, even if such behavior is not of a 'romantic, lewd or sexual nature.'" (citing *Owens*, 786 F. Supp. 3d at 845–46)); ECF No. 13. And after *Toomey*, Judge Woods elaborated upon his *Owens* decision in *Waiguchu v. Morgan Stanley & Co. LLC*, No. 25-CV-7443, 2026 WL 892069 (S.D.N.Y. Apr. 1, 2026). In *Waiguchu*, Judge Woods clarified that "differential treatment motivated by a plaintiff's gender [is] not by itself 'sexual harassment' for the purposes of the EFAA," rejecting what he described as plaintiff's misreading of *Owens*. 2026 WL 892069, at *10 (quoting *Owens*, 786 F. Supp. 3d at 846).

### 2. Applying the *Owens* Standard, the Complaint Fails to Plausibly Allege Sexual Harassment Under the NYCHRL

Assuming, without deciding, that *Owens* and its progeny provide the correct standard for determining whether a NYCHRL claim triggers application of the EFAA, the Complaint fails to meet this standard. While the Complaint alleges instances of *differential treatment* based on gender, it fails to plausibly plead *sexual harassment*.

Plaintiff claims that Temple "criticized her and blamed her for things [Temple] knew were not Lane's fault" and "excluded Lane from business communications relating to her responsibilities[.]" Opp. at 21 (citing Compl. ¶¶ 39–40, 44, 46). Plaintiff also claims that Temple "avoided" her while spending time with her male peers, "made false accusations" about Lane's performance, and generally treated Plaintiff less well than her male peers. *Id.* (citing Compl. ¶¶ 47–48, 51–52, 55). Plaintiff further alleges that she was assigned data entry busy work

which her male peers did not receive. Compl. ¶ 75. These allegations may plausibly plead gender discrimination, but not sexual harassment.

A comparison of Lane's allegations to *Owens* and *Waiguchu* is instructive. The *Waiguchu* court noted that while "hostile abusive conduct, such as shouting, can constitute sexual harassment . . . Ms. Waiguchu's complaint [did] not adequately plead it in [her] case" because, for example, her supervisor had not used "gendered terms" and had instead "berated [her] in a group setting regarding her work performance." 2026 WL 892069, at *11 (internal quotation marks omitted) (citing *Owens*, 786 F. Supp. 3d at 831). *Waiguchu* also noted that allegations that supervisors had been "less friendly" and "less communicative" with the plaintiff compared to male colleagues and treated the plaintiff in a "belittling and condescending" manner were all allegations of differential treatment that "[did] not constitute 'sexual harassment' conduct for purposes of the EFAA." *Id.* Although such conduct had been "unwelcome" to the plaintiff, the court reasoned that "the drafters of the EFAA did not extend its protection to all categories of gender-based discrimination[.]" *Id.*

In contrast, the *Owens* plaintiff alleged that she was "yelled at . . . in front of directors" and "denigrated . . . in front of subordinates" to the point where she was "verbally threatened and berated[.]" *Owens*, 786 F. Supp. 3d at 839, 848. The plaintiff also alleged that "other female partners complained about similarly disrespectful and derogatory conduct." *Id.* at 848. The court determined these allegations sufficiently pleaded sexual harassment under the NYCHRL because the

plaintiff had alleged that "she and other women were publicly demeaned and disparaged in a way that . . . none of their male colleagues were[.]" *Id.* at 848–49. But the *Owens* court noted that allegations that supervisors had "work[ed] together to prevent [plaintiff] from getting tenure" and "provided [plaintiff] very few leads despite providing leads to young male directors" did not constitute sexual harassment because such behavior was "not unwelcome verbal or physical behavior directed at [plaintiff,]" but rather "conduct that occurred behind [plaintiff's] back that gave her fewer opportunities to excel." *Id.* at 849.

In light of *Waiguchu* and *Owens*, Plaintiff's factual allegations fall short of alleging sexual harassment. Lane does not allege any shouting or yelling; she instead claims that she was "criticized." Compl. ¶¶ 39, 44–45. Nor does she allege demeaning conduct or use of gendered terms.[5] Further, Lane's allegations that "Temple did not support" her and "excluded [her] from business communications and decisions" are similar to the *Waiguchu* allegations that constituted gender-based discrimination but not sexual harassment—including that supervisors were "less friendly" and "less communicative" with the plaintiff than with her male colleagues. *Id.* ¶¶ 40, 46, 49; *Waiguchu*, 2026 WL 892069, at *11. Here, Lane's allegations may describe differential treatment, but fail to describe unwelcome verbal or physical behavior based on Lane's gender thereby constituting sexual

[5] As Defendant points out, although Lane's briefing asserts that her manager "berated Lane in front of her male peers," opp. at 9 (citing paragraph 45 of the Complaint), that paragraph of the Complaint alleges, *inter alia*, that "Temple criticized Lane in front of her younger, male peers." Compl. ¶ 45.

harassment. Therefore, these claims under the NYCHRL do not trigger application of the EFAA.

#### 3. Plaintiff Fails To Plead Sexual Harassment Under Title VII, the NJLAD and the NYSHRL

Lane also asserts claims under Title VII, the NJLAD and the NYSHRL, but she fails to make a plausible allegation of sexual harassment under any of these statutes. Thus, none of these claims triggers the EFAA.

Under Title VII, a claim of sexual harassment can proceed under two theories: quid quo pro harassment and a hostile work environment. *Waiguchu*, 2026 WL 892069, at *8 (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998)). Lane makes no allegations of quid pro quo harassment. A claim of a hostile work environment requires allegations that plaintiff's workplace was "permeated with discriminatory intimidation, ridicule and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). While the Complaint asserts a hostile work environment claim, Lane's opposition to the Motion does not address this "severe and pervasive" standard and makes no express argument that it is met. *See* Opp. at 22–24. Instead, the primary focus of Lane's argument about her Title VII claim is that, like the NYCHRL, claims of sexual harassment under Title VII are not limited to conduct motivated by sexual desire. *Id.* at 22–23.

The closest Lane comes to contending that she meets the "severe and pervasive" standard is her argument that her allegations are "very similar" to those

made in *King v. Aramark Svcs., Inc.*, 96 F.4th 546 (2d Cir. 2024). *Id.* at 23. That decision, however, addressed the *timeliness* of the plaintiff's Title VII claim. *King*, 96 F.4th at 559–61. To the extent Lane suggests that *King* implicitly upheld the legal sufficiency of the plaintiff's hostile work environment claim, that case included very different allegations that are absent here. For example, the course of conduct said to comprise the hostile work environment in *King* included allegations that plaintiff's supervisor "body shamed" her by staring at her midsection with "disgust" "two to three times per week," made other insulting weight-related remarks, including suggesting in front of others that plaintiff was overeating, and telling plaintiff on several occasions that she should "go to the gym at 5:30 in the morning" because the CEO would like to see her "actively working out at the gym." *Id.* at 554. Lane's Complaint contains nothing remotely like these allegations and fails to allege conduct meeting the high standard for a hostile work environment under Title VII.

An "actionable hostile work environment claim under the NJLAD closely resemble[s] the . . . elements of [a] Title VII hostile work environment claim" and only requires an "additional element of *respondeat superior* when a plaintiff sues their employer for the acts of an employee." *Michael v. Bravo Brio Rests. LLC*, No. 23-CV-3691, 2024 WL 2923591, at *5 (D.N.J. June 10, 2024) (alterations in original) (internal quotation marks omitted) (citing *Cardenas v. Massey*, 269 F.3d 251, 261–62 (3d Cir. 2001)). Thus, a Title VII analysis does not need to "discuss the NJLAD separately, except to note that Plaintiff has adequately alleged an NJLAD claim

because she has pleaded one under Title VII." *Id; see also Prioli v. Cnty. of Ocean,* No. 18-CV-256, 2021 WL 4473159, at *18 (D.N.J. Sept. 30, 2021) (explaining that "courts employ the same framework and standard of review when analyzing claims under Title VII and NJLAD" (quoting *Behrens v. Rutgers Univ.*, No. 94-CV-358, 1996 WL 570989, at *4 (D.N.J. Mar. 29, 1996))). Because Lane fails to make plausible allegations of a hostile work environment under Title VII, she also fails to do so under the NJLAD.

Finally, Plaintiff fails to plead sexual harassment under the NYSHRL. A 2019 amendment to the NYSHRL implemented a more lenient standard of liability "that has been likened to that of the NYCHRL." *Yost*, 657 F. Supp. 3d at 578 (citing *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022)). "The case law, however, has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of the NYCHRL—or merely closer to it." *Id.* (emphasis in original) (citations omitted). Accordingly, it is appropriate to apply the NYCHRL standard to Lane's NYSHRL claim "because the NYCHRL supplies the—or tied with the NYSHRL for—the most lenient applicable liability standard." *Id.* "Because [Lane's] allegations of sexual harassment in her workplace do not meet the plausibility threshold of the NYCHRL, they also fail under the NYSHRL. Thus, the EFAA is not triggered by [Lane's] NYSHRL claims." *Singh*, 750 F. Supp. 3d at 259.

### B. A Claim of Retaliation Can Independently Support Application of the EFAA

The EFAA extends to claims of "retaliation resulting from a report of sexual harassment" because such retaliation is "relat[ed] to conduct that is alleged to constitute sexual harassment." *Diaz-Roa*, 757 F. Supp. 3d at 536 (alteration in original) (internal quotation marks omitted) (quoting *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024)). Lane's argument on retaliation does not distinguish between her various statutory claims, *see* Opp. at 25–27, so the following analysis focuses primarily on the NYCHRL on the theory that it imposes the most lenient standards. To allege retaliation under the NYCHRL, a plaintiff must show that "she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Kia Song Tang v. Glocap Search LLC*, No. 14-CV-1108, 2015 WL 1344788, at *5 (S.D.N.Y. Mar. 24, 2015) (alteration in original) (quoting *Mihalik*, 715 F.3d at 112). A plaintiff is not required to show that "the conduct she opposed was actually a violation of [the NYSHRL or NYCHRL]," only that "she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365–66 (S.D.N.Y. 2021) (alteration in original) (citation omitted).

Plaintiff claims that "her retaliation claims provide an independent basis for the existence of a sexual harassment dispute under the EFAA." Opp. at 27.[6] Defendant responds that the conduct Plaintiff complained of does not qualify as "sexual harassment." Reply at 11–12.

The undersigned agrees with Defendant. Even though the NYCHRL only requires a plaintiff to have a "good faith, reasonable belief that the underlying employment practice was unlawful[,]" *Buchanan*, 556 F. Supp. 3d at 367, the retaliation needs to have "result[ed] from a report of sexual harassment," as opposed to gender-based discrimination. *Olivieri*, 112 F.4th at 92. In *Olivieri*, the EFAA barred arbitration because the plaintiff's retaliation allegations were based on her complaints of being "sexually assaulted and sexually harassed." *Id.* at 80–81, 91–92. On the other hand, the *Meta Platforms* court noted that allegations of retaliation for reports that "women were being *discriminated* against" were insufficient to trigger the EFAA. 2025 WL 2782484, at *9 (emphasis in original).[7]

---

[6] Plaintiff also contends that Defendant waived its argument regarding the retaliation claim by failing to address it in its opening brief. Opp. at 26. But the Court has an obligation to determine whether this case must go to arbitration and would consider Plaintiff's retaliation claims regardless. Further, Plaintiff had an opportunity to—and did—address these claims in opposition to the motion. Thus, this is not a case where the non-movant had no opportunity to address the issue. *See Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, No. 25-CV-5020, 2025 WL 2388287, at *2 (S.D.N.Y. Aug. 18, 2025) ("Where, on the other hand, the nonmoving party has had an adequate opportunity to respond to the new arguments or evidence presented by the moving party's reply brief, courts may, in their discretion, consider such arguments or evidence.").

[7] The *Meta Platforms* decision defined sexual harassment as requiring sexually charged behavior, such as lewd remarks or unwelcome sexual advances. 2025 WL 2782484, at *8–9. Even assuming that *Meta Platforms* was incorrect about this definition of sexual harassment, that would not undermine its conclusion that, for a retaliation claim to trigger the EFAA, the protected activity must relate to conduct that is alleged to constitute sexual

These decisions indicate that Plaintiff must have reported or complained of sexual harassment, rather than gender-based discrimination, for the EFAA to bar arbitration due to a retaliation claim. Thus, it is necessary to evaluate whether Plaintiff's retaliation claims have plausibly demonstrated a good faith, reasonable belief that she opposed sexual harassment.

### 1. Plaintiff's Retaliation Allegations Do Not Trigger the EFAA

Plaintiff argues that the retaliatory actions taken against her include her placement on a Performance Improvement Plan[8] ("PIP"), Compl. ¶¶ 51–53, 78; false claims related to her performance, *id.* ¶¶ 55, 71–72; creation of obstacles to her return from medical leave, *id.* ¶¶ 63–70; assignment of administrative work, *id.* ¶ 75; and her eventual firing, *id.* ¶ 80.

While the Complaint contains the conclusory assertion that "defendant retaliated against plaintiff for her opposition to unlawful sex discrimination, including *sexual harassment*[,]" Compl. ¶ 106 (emphasis added), Plaintiff fails to plausibly plead any facts demonstrating that she reported sexual harassment. *See Yost*, 657 F. Supp. 3d at 581 n.13 (explaining in the context of an allegation that

---

harassment. In other words, *Meta Platforms*' analysis of retaliation claims can apply assuming a broader definition of sexual harassment.

[8] By itself, "the issuance of a performance improvement plan to an employee is simply not an adverse employment action." *McGrath v. Thomson Reuters*, No. 10-CV-4944, 2012 WL 2119112, at *11 (S.D.N.Y. Apr. 30, 2012), *report and recommendation adopted*, 2012 WL 2122325 (S.D.N.Y. June 12, 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013). However, an "unsatisfactory performance review can constitute an adverse employment action if there are accompanying adverse consequences affecting the employee's terms of employment." *Id.* at *12 (citing *Gibbs v. New York State Dep't of Taxation and Finance*, No. 4-CV-905, 2009 WL 754307, at *6 (S.D.N.Y. March 20, 2009)).

conduct was "harassing," "[t]hat adjective itself must be put aside as conclusory." (citing *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012))).

A comparison of the Complaint's retaliation allegations to those in *Yost* is instructive. In *Yost*, allegations of "retaliation for the reporting of *sexual harassment*" were distinguished from allegations of retaliation for "claim[ing] that certain . . . employment policies were *gender-discriminatory*." *Id.* at 583 n.14 (emphases added). There, the plaintiff alleged that "[d]efendants retaliated against [her] when they terminated her the day after she informed her superiors . . . that she could not comply with their . . . discriminatory personnel policies" and had "rais[ed] concerns about discrimination towards women." *Id.* The *Yost* court noted that these allegations fell short of showing that plaintiff had complained of sexual harassment rather than general "gender-discriminatory" policies. *Id.*

Similarly, Lane's factual allegations, as opposed to her conclusory labels, show that she complained of discrimination and differential treatment by Temple, rather than sexual harassment. Plaintiff claims she complained to Temple that she "did not feel supported by her . . . [and that] Temple was targeting her and *treating her differently* from the rest of the team." Compl. ¶ 49 (emphasis added). Plaintiff also claims she complained "to HR about Temple's *treatment* of her." *Id.* ¶ 53 (emphasis added). Further, Plaintiff describes that she refuted "Temple's accusations about her performance" and complained about how "she was *treated differently* from her younger, male peers" in her emails to Temple, Bradberry, Wolff, and an employee relations representative. *Id.* ¶¶ 57, 59 (emphasis added). In her

meeting with the HR representative, Plaintiff alleges that she gave "specific examples of Temple's *continued negative treatment*" after she had returned from medical leave. *Id.* ¶ 74 (emphasis added). These allegations fail to plausibly demonstrate that Plaintiff had a "good faith, reasonable belief" that she opposed sexual harassment, as opposed to gender discrimination.

Plaintiff also claims that she "filed a charge with the EEOC under Title VII," *id.* ¶ 77, and that her attorney sent a letter to Defendant "asserting claims on [Lane's] behalf of violations of civil rights laws." *Id.* ¶ 62. These allegations fail to describe the specific conduct Lane complained about in her charge and letter. *Id.* ¶¶ 62, 77. Without this information, these allegations do not plausibly support the claim that Plaintiff complained of sexual harassment.

Therefore, Plaintiff's retaliation allegations do not independently support application of the EFAA because she fails to plausibly plead that she complained of sexual harassment. Because Plaintiff does not plausibly plead retaliation for sexual harassment under the NYCHRL, which is the most lenient statute that she invokes, the EFAA does not bar arbitration of her claims.

### C. This Matter Is Stayed Pending Arbitration

When a district court determines that a lawsuit involves an arbitrable dispute because the arbitration agreement is valid, the court must send the dispute to arbitration and stay the litigation. *Smith v. Spizzirri*, 601 U.S. 472, 477–79 (2024). "A mandatory stay comports with the FAA's statutory scheme and pro-arbitration policy" because it "enables parties to proceed to arbitration directly,

unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015). Here, Lane does not dispute that she signed the Arbitration Agreement or that it covers her claims. To the contrary, Lane concedes that "but for the EFAA, she would have to resolve her claims against Salesforce in arbitration." Opp. at 12. Because the undersigned concludes that the EFAA does not bar arbitration of any of Plaintiff's claims, the Court must stay the litigation pending arbitration.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to compel arbitration and stay the case is **GRANTED**. The Clerk of Court is respectfully directed to terminate the Motion at ECF No. 9 as **GRANTED** and to stay this matter.

**SO ORDERED.**

Dated: August 14, 2026
New York, New York

Henry J. Ricardo
United States Magistrate Judge